UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

SOFIA SAENZ,

                      Plaintiff,              07 Civ.  (   )

       -against-

TOWN/VILLAGE OF HARRISON, New      COMPLAINT
York and BARBARA EGGENHAUSER in
her official capacity as a Westchester County,
New York, Assistant District Attorney,

                                        Jury Trial Demanded

                 Defendants.
--------------------------------------------------------X

'07 CIV 10534

Plaintiff SOFIA SAENZ, by her attorneys Lovett & Gould, LLP, for her complaint respectfully states:

### NATURE OF THE ACTION

1. This is an action for compensatory damages, proximately resulting from the conduct of certain police officers employed by the Town/Village of Harrison and Defendant Eggenhauser jointly undertaken under color of the laws of the State of New York, for violations of Plaintiff's federal civil rights, 42 U.S.C. §1983.

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

3. Plaintiff SOFIA SAENZ is a female of Peruvian national origin. She is also domiciliary of the State of New York and a resident of the Northern Counties.

4. Defendant TOWN/VILLAGE OF HARRISON (hereinafter "Town"), New York, is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

5. Defendant BARBARA EGGENHAUSER (hereinafter "Eggenhauser"), who is sued only for injunctive relief in her official capacity, at all times relevant to this complaint was employed as an Assistant District Attorney in the Office of the Westchester County, New York, District Attorney.

## THE FACTS

6. On August 20, 2007, at or about 9:15 P.M. at or about 235 Harrison Avenue in the Town, Plaintiff witnessed an incident involving Joshua D. Clark (Plaintiff's then boyfriend) and Ralph Tancredi (Plaintiff's former boyfriend, a police officer employed by the Town, and the President of the Town's PBA) during which *inter alia* Clark threatened to strike Tancredi in the head with a baseball bat.

7. Responding Town police seized the bat, and *inter alia* transported Plaintiff to the Town's Police Headquarters where they (Police Officer Vincent Mussolino and a female police officer whose identity is not presently known to Plaintiff) detained her in a room for approximately three hours with a view towards coercing her, over her repeated objection, to bear witness against Tancredi - - not because of any wrongdoing by Tancredi, but to retaliate against Tancredi for his having previously filed federal civil

rights actions against the Town, its Chief of Police and other members of the Police Department who violated his and other police officers federally protected rights. DeVittorio v. Hall, 07 Civ. 0812 (WCC); Duffelmeyer v. Marshall, 07 Civ. 2807 (WCC). That retaliatory conduct is known to, and has been expressly condoned by, a majority of the members of the Town's Board of Police Commission which has final discretionary policy making authority over the Police Department and its administration.

8. At the time of Plaintiff's detention in Headquarters she did not consent and made it clear to her captors that she had no interest in assisting in their retaliatory plan. In that connection there was neither probable cause nor arguable probable cause to believe she had engaged in any wrongdoing, she was conscious of her confinement, and that confinement was not otherwise authorized and/or privileged.

9. Several days thereafter Mussolino presented himself at Plaintiff's residence and attempted to coerce Plaintiff to sign paperwork, requested by Eggenhauser, as a predicate for issuance against Tancredi and in favor of Plaintiff of a temporary order of protection. Plaintiff refused and as a result Mussolino directed her to call Eggenhauser.

10. In turn Eggenhauser directed Plaintiff to report to the Office of the District Attorney where, again, Plaintiff repeatedly advised that she did not want anything to do with either an order of protection involving Tancredi or assisting in the [First Amendment] retaliation directed against Tancredi by reason of his federal lawsuits.

11. Despite Plaintiff's repeated protestations to Eggenhauser, Eggenhauser advised Plaintiff that if she did not agree to an order of protection Clark would "get in trouble" - - a threat that she had earlier conveyed to Clark who she told would be arrested

3

on Tancredi's complaint if he (Clark) did not first accuse Tancredi of criminal wrong doing.

12. At the time of Plaintiff's in-office meeting with Eggenhauser and following Plaintiff's repeated refusals to agree to an order of protection, Plaintiff's confinement in Eggenhauser's office was non-consensual, Plaintiff was aware of her confinement, there was no probable cause and/or arguable probable cause to detain her, and that detention was not otherwise privileged or authorized. Eggenhauser's conduct with respect to Plaintiff was in accordance with long-established policy of the District Attorneys (past and current) who have knowingly condoned Eggenhauser's commission of crimes including subornation of perjury by a civilian complainant and a County Police Officer before a Westchester County Grand Jury [Corona v. Lunn, 00 Civ. 7330 (BDP). As to the incumbent District Attorney's condonation of crimination wrong-doing by high ranking members of the Harrison Police Department, *see* Tornello v. County of Westchester, 07 Civ. 6697 (CLB).

13. One day prior to Tancredi's appearance in Town Justice Court on a violation (Harrassment in the Second Degree in violation of New York Penal Law Section 240.26) relating to Clark and the August 20, 2007, interaction, Eggenhauser again summoned Plaintiff to her office at which time Eggenhauser (in the presence of Town Police Officer Edward Lucas, and Town Police Detective Richard Light) repeatedly instructed Plaintiff (over Plaintiff's objections) that she had been "abused" by Tancredi and questioned her about supposed cocaine abuse by Tancredi. Light then falsely advised her that Tancredi had referred to Plaintiff as a "coke whore". Lucas then advised Plaintiff that Tancredi was a thief and had stolen money from the PBA. Eggenhauser, Light and Lucas all then

4

made not so subtle threats that if Plaintiff did not cooperate with them against Tancredi in connection with the retaliatory plan with respect to which Plaintiff did not want to participate they would seek to have her deported.

14. Subsequent to Tancredi's Town Court appearance, to which Plaintiff had been brought by Town police, Light (on the pretext that he was going to drive Plaintiff to her residence), drove her instead to Police Headquarters where he placed her in a room and interrogated her about Tancredi. In response Plaintiff repeatedly protested her confinement, advising that she was "hungry and wanted to leave - - I don't want to be part of this". Light would not permit Plaintiff to depart.

15. Officer Lucas and Police Officer Mark DiGiacomo then joined Light in the room with Plaintiff and further interrogated her, this time suggesting that Tancredi was involved in illegal gambling operations. Again Plaintiff protested that she did not want "any part of this" and that she "want[ed] to go home". In response Lucas cautioned her to "go with the order of protection - - you're in with us".

16. Plaintiff's confinement at Headquarters by Light, Lucas and DiGiacomo was not consented to by her, she was aware of her confinement, there was no probable cause or arguable probable cause for her detention, and that confinement was not otherwise privileged or authorized - - although unlawful conduct by members of the Town Police Department has been knowingly condoned by a majority of the Town's Board of Police Commissioner. Ultimately, Light drove Plaintiff to her residence.

17. As a proximate result of Defendant's conduct Plaintiff has been forced to endure: repeated unlawful imprisonments; repeated victimization as a result of incidents of Official Misconduct, Coercion and Attempted Coercion by the Town police and

Eggenhauser; repeated threats against her and Clark; emotional upset; anxiety; public embarrassment; public humiliation; shame and she has otherwise been rendered sick and sore.

### AS AND FOR A FIRST CLAIM AGAINST THE TOWN

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

19. Under the premises the Town violated Plaintiff's rights as guaranteed by the Fourth Amendment to the Untied States Constitution, 42 U.S.C. .§1983.

### AS AND FOR A SECOND CLAIM AGAINST EGGENHAUSER

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

21. Under the premises Eggenhauser's conduct, while acting in concert with the Town police, violated Plaintiff's rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE judgment is respectfully demanded:

    a. Awarding against the Town such compensatory damages as the jury may determine,

    b. Granting against the Town, its officials and/or agents a permanent injunction barring them from contacting, threatening, intimidating and/or imprisoning Plaintiff,

  c. Granting against Eggenhauser and/or other members of the District Attorney's staff a permanent injunction barring them from contacting, threatening, intimidating and/or imprisoning her,

  d. Awarding reasonable costs and attorney's fees, and,

  e. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
   November 21, 2007

              LOVETT & GOULD, LLP
              By: _____
              Jonathan Lovett (4854)
              Attorneys for Plaintiff
              222 Bloomingdale Road
              White Plains, N.Y. 10605
              914-428-8401