UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SOFIA SAENZ,                                    **07 CIV 10534 (WCC)**

                              Plaintiffs,

        -against-

EDWARD LUCAS, individually, VINCENT
MUSSOLINO, individually, RICHARD
LIGHT, individually, MARK DiGIACOMO,
individually, POLICE OFFICER JANE DOE,
individually, and the TOWN/VILLAGE OF
HARRISON, New York,

                              Defendants.
------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EDWARD
LUCAS, MARK DIGIACOMO AND THE TOWN/VILLAGE OF
HARRISON, NEW YORK'S MOTION TO DISMISS**

**FRIEDMAN, HARFENIST, LANGER & KRAUT**
**Attorneys for Defendants**
**Town/Village of Harrison, New York**
**2975 Westchester Avenue, Suite 415**
**Purchase, New York  10577**
**(914) 701-0800**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

POINT I

   THE LEGAL STANDARD FOR A MOTION TO DISMISS .................................. 5

POINT II

   THE PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION AGAINST
   LUCAS AND DIGIACOMO .................................................................................... 6

POINT III

   THE PLAINTIFF HAS FAILED TO IDENTIFY AN OFFICIAL POLICY,
   PRACTICE OR PROCEDURE THAT ALLEGEDLY GAVE RISE TO THE
   CONSTITUTIONAL VIOLATION ......................................................................... 9

    A.  The Elements of a Cause of Action for Monell Violations............................... 10

    B.  Saenz Has Not Properly Pleaded a Municipal Policy ....................................... 12

    C.  Captain Marracini Is Not A Policymaker........................................................... 13

    D.  The Complaint Does Not Allege a Widespread Practice That Could
        Constitute Municipal Custom ............................................................................ 16

CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Allan v. City of New York*, 386 F.Supp.2d 542 (S.D.N.Y. 2005)................................................. 16

*Allen v. City of New York*, 2007 WL 24796 (S.D.N.Y. Jan. 3, 2007)........................................... 15

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003) ....................................................... 15

*Baron v. Complete Management, Inc.*, __ F.3d __, 2008 WL 205327 (2d Cir. 2008) .................. 5

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955,1966, 167 L.Ed.2d 929
 (2007),.................................................................................................................................. 5

*Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).......................... 9

*Carbajal v. County of Nassau*, 271 F.Supp.2d 415, 422 (E.D.N.Y. 2003)................................. 18

*Dallas v. Goldberg*, 2000 WL 1092986 (S.D.N.Y. Aug. 4, 2000) ............................................... 8

*Decker v. Campus*, 981 F.Supp. 851, 857 (S.D.N.Y. 1997) ...................................................... 7

*Diodatti v. City of Little Falls*, 2007 WL 189130 (N.D.N.Y. Jan. 22, 2007) ............................. 16

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993)......................................................... 17

*Esgro v. Serkiz*, 2007 WL 203957 (N.D.N.Y. Jan. 24, 2007)................................................... 16

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177
 (2d Cir.2004)........................................................................................................................ 5

*Goldfine v. Kelly*, 80 F.Supp.2d 153, 162, (S.D.N.Y. 2000) ...................................................... 9

*Hodge v. Ruperto,* 739 F.Supp. 873, 877, (S.D.N.Y. 1990) .................................................... 11

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).......................................................................... 18

*Martino v. Westchester County Dept. of Corrections*, 2008 WL 144827 at *3
 (S.D.N.Y. Jan. 15, 2008)...................................................................................................... 12

*McCray v. City of New York*, 2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007) ............................. 18

*Merritt v. City of New York*, 2001 WL 1097866 (S.D.N.Y. Sept. 19, 2001)................................ 8

*Miotto v. Yonkers Public Schools,* 2008 WL 199472 at * 2, (S.D.N.Y. Jan. 22, 2008) ................ 6

*Monell v. City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ............. passim

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct, 1292, 89 L.Ed.2d 452 (1986)....... 13

*Prowisor v. Bon-Ton, Inc.,* 426 F.Supp.2d 165 (S.D.N.Y. 2006),.............................................. 11

*Qader v. New York*, 396 F.Supp.2d 466, 469 (S.D.N.Y. 2005)................................................. 11

*Raphael v. County of Nassau*, 387 F.Supp.2d 127,132 (E.D.N.Y. 2005).................................. 16

*Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001) ..................................................................... 6

*Smith v. City of New York*, 2005 WL 1026551 (S.D.N.Y. May 3, 2005) ................................... 16

*St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).................... 15

*Universal Calvary Church v. City of New York*, 2000 WL 1538019 at n.37
 (S.D.N.Y. Oct. 17, 2000) ....................................................................................................... 8

*Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir.1995)................................................... 14

*Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986) ................................................................... 14

*Williams v. City of Mount Vernon*, 428 F.Supp.2d 146, 157 (S.D.N.Y. 2006)..................... passim

*Williams v. New York City Housing Authority*, 2007 WL 4215876
 (S.D.N.Y. Nov. 30, 2007) ..................................................................................................... 18

*Wilson v. 103rd Precinct*, 182 F.3d 902 (2d Cir. 1999)...................................................... 10,17

*Zahra v. Town of Southold*, 48 F.3d 674, 678 (2d Cir.1995)................................................... 11

## Statutes

42 U.S.C. §1983............................................................................................................. passim

USC §IV.............................................................................................................................. 6

## PRELIMINARY STATEMENT

The instant matter is before the Court on Defendants' Edward Lucas ("Lucas"), Mark DiGiacomo ("DiGiacomo") and the Town/Village of Harrison's ("Harrison") motion to dismiss Plaintiff Sofia Saenz's ("Saenz") first amended complaint ("FAC") pursuant to FRCP 12(b)(6) for failure to state a cause of action.[1]

In the FAC, Saenz alleges that various policemen employed by the Harrison Police Department allegedly violated her civil rights under 42 U.S.C. §1983. More specifically, Saenz alleges that these policemen's actions in questioning her and attempting to obtain her cooperation in relation to a criminal investigation purportedly violated her rights. Additionally, Saenz asserts that Harrison has municipal liability as these actions were purportedly undertaken as part of a policy to retaliate against non-party Ralph Tancredi ("Tancredi") in relation to a lawsuit that Tancredi filed against Harrison and various Harrison employees. Without further explanation, the complaint then alleges that "under the premises Defendants violated Plaintiff's rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983."

---

[1] The FAC also identifies Vincent Mussolino ("Mussolino") and Richard Light ("Light") as Defendants in this action. As the FAC pleads arguably colorable causes of action against Mussolino and Light, they have filed an answer rather than a motion to dismiss.

Simply stated, the FAC fails to state a cause of action against Lucas and DiGiacomo as it fails to allege any actions that could reasonably be construed as violative of Saenz's civil rights. Additionally, the FAC does not state a claim against Harrison, as it does not allege any specific municipal policy or custom under *Monell v. City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) which allegedly led to the violation of Saenz's civil rights. Indeed, the only factual allegations in the FAC are related to actions of individual Harrison employees, whose actions were purportedly taken as part of a policy to retaliate against Saenz for a lawsuit filed by Tancredi. As Saenz has failed to allege anything other than a conclusory allegation that there was a policy that resulted in a violation of her rights, she has not made out a cause of action against Harrison.

## STATEMENT OF FACTS[2]

As alleged in the FAC, Saenz is a female of Peruvian origin who resides in the "Northern Counties" of the State of New York. (FAC at ¶3). The complaint identifies the following other parties to the lawsuit: Lucas, DiGiacomo, Mussolino and Light who are police officers employed by Harrison (FAC at ¶¶4-6) and Harrison, which is a municipal subdivision of the State of New York. (FAC at ¶7).

---

[2] As the instant motion is made pursuant to FRCP 12b(6) all factual statements are derived wholly from the FAC, which must be presumed by the Court to be true at this juncture. A copy of the FAC is appended to this submission as Exhibit "A". The defendants do not admit the truth of these statements and only make reference to them for the purposes of this motion.

The Complaint alleges four incidents that purportedly involved conduct attributed to Harrison employees. The first incident allegedly took place on August 20, 2007, when Saenz purportedly witnessed an incident between her former boyfriend ("Tancredi") and her paramour at the time, Joshua Clark ("Clark"). During this incident, Clark allegedly threatened Tancredi with a baseball bat. (FAC at ¶8). At some unknown point, Mussolino ("Mussolino") and an unidentified female police officer seized the bat and transported Saenz to Police Headquarters, where she was purportedly detained for three hours in an effort to "coerce her" to bear witness against Tancredi as retaliation for a lawsuit that Tancredi filed against Harrison and some of its employees. (FAC at ¶9). This retaliatory conduct was purportedly known to and condoned by the "Town's Board of Police Commission." (FAC at ¶10). The complaint alleges that the detention at the Police Headquarters was without consent and without probable cause. (FAC at ¶11).

The second alleged incident involving Harrison employees occurred on some unidentified later date, when Mussolino purportedly appeared at Saenz's residence and asked her to sign paperwork requested by Eggenhauser in order to obtain a temporary order of protection. (FAC at ¶12). The complaint further alleges that Saenz refused to sign the paperwork. (Id.).

The third alleged incident purportedly occurred in the office of non-party, Barbara Eggenhauser ("Eggenhauser"), a Westchester County Assistant District

Attorney.[3] (FAC at ¶16). During this meeting, Eggenhauser purportedly acting in concert with Lucas and Light instructed Saenz that she had been abused by Tancredi and further asked Saenz about Tancredi's cocaine addiction. (Complaint at ¶16). The complaint alleges that during the meeting, Light supposedly told Saenz that Tancredi had called Saenz a "coke whore" (FAC at ¶17) and that Lucas advised Saenz that Tancredi was a thief. (FAC at ¶18). Lastly, the paragraph alleges that the three individuals made "not so subtle threats" that if Saenz did not cooperate they would seek to have her deported. (FAC at ¶19).

The final incident identified in the complaint alleges that after Tancredi's court appearance, Light allegedly drove Saenz to police headquarters where she was "interrogated" about Tancredi and not permitted to leave. (FAC at ¶20). Later, Lucas and DiGiacomo purportedly joined Light and "suggested" that Tancredi was involved in an illegal gambling operation. The complaint alleges that in response, Saenz said that she wished to leave to which Lucas told her to "go with the order of protection – you're in with us" before Light then drove Saenz home. (FAC at ¶21).

The instant matter was commenced by filing of a summons and complaint on November 21, 2007. Thereafter, the Court so-Ordered a stipulation between Saenz and Harrison, extending Harrison's time to answer or otherwise move until

---

[3] Eggenhauser was named a party in the original complaint. However, during the pre-motion conference on February 1, 2008, Saenz agreed to voluntarily discontinue the action against her without prejudice and as such she is not named as a party in the FAC.

the date of a pre-motion conference on February 1, 2008. During the pre-motion conference, Saenz agreed to file an amended complaint (the FAC) which was served on the individual defendants on February 20, 2008.

## POINT I

### THE LEGAL STANDARD FOR A MOTION TO DISMISS

As codified at FRCP 12(b)(6), a party may move to dismiss an action if the complaint fails to state a claim upon which can be granted. When faced with a motion pursuant to FRCP 12(b)(6) the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir.2004). Under the reformulated test set down by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955,1966, 167 L.Ed.2d 929 (2007), a pleading is required to contain enough facts to render the underlying legal theory plausible. *See generally*, *Baron v. Complete Management, Inc*., __ F.3d __, 2008 WL 205327 (2d Cir. 2008)(affirming dismissal of compliant and denial of leave to replead where proposed amended complaint failed to plead "enough facts to state a claim to relief that is plausible on its face" under *Twombly*). In applying *Twombly*, this Court noted that when making a review of a complaint challenged under Rule 12(b)(6), a court must be

guided by the principle that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See, Miotto v. Yonkers Public Schools,* 2008 WL 199472 at * 2, (S.D.N.Y. Jan. 22, 2008).

In the instant matter it is respectfully submitted that the Court should grant Lucas, DiGiacomo and Harrison's motion as the allegations in the complaint simply cannot sustain an action against them.

## POINT II

## THE PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION AGAINST LUCAS AND DIGIACOMO

In the FAC's only cause of action, Saenz asserts that her claim for relief is predicated upon alleged violations of her Fourth Amendment rights. (FAC ¶25). As the Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" U.S. Const. §IV, in order for Saenz to state a cause of action Lucas and DiGiacomo the FAC must contain allegations indicating that Lucas and DiGiacomo effectuated a seizure of Saenz. As the FAC fails to state facts that would give rise to such an inference, it must be dismissed as against Lucas and DiGiacomo.

As stated by the Second Circuit in *Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001) in order to make out a "§1983 claim for false arrest or

imprisonment, plaintiff must demonstrate that defendant intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged." *See also, Williams v. City of Mount Vernon*, 428 F.Supp.2d 146, 157 (S.D.N.Y. 2006) and *Decker v. Campus*, 981 F.Supp. 851, 857 (S.D.N.Y. 1997) (noting that a claim arising under 42 U.S.C. §1983 was substantially similar to New York claims, requiring a showing "that the officer intentionally confined him without his consent and without justification").

In the instant matter, the FAC fails to state a claim under § 1983 against either DiGiacomo or Lucas. In relation to DiGiacomo, the only conduct alleged against him in the complaint was that after Light allegedly brought Saenz to the precinct and refused to let her leave:

> Lucas and DiGiacomo then joined Light in the room with Plaintiff and further interrogated her, this time suggesting that Tancredi was involved in illegal gambling operations. Again Plaintiff protested that she did not want "any part of this" and that she "wanted[ed] to go home". In response Lucas cautioned her to "go with the order of protection - - you're in with us. Ultimately, Light drove Plaintiff to her residence.

(FAC at ¶21).

In relation to Officer Lucas, the FAC contains two references to his conduct. In addition to the allegations contained in ¶21 wherein Lucas joined DiGiacomo in the room after other officers purportedly prevented Saenz from leaving, there was an additional allegation against Lucas in relation to a meeting in Eggenhauser's office. As described in ¶16, the FAC indicates that Lucas joined Detective Light

and Eggenhauser in Eggenhauser's office at which time they all purportedly instructed Saenz that she had been abused, before Lucas allegedly told her that Tancredi was a thief (FAC at ¶18). Finally the story ends with Lucas allegedly joining Light and Eggenhauser in threatening Saenz that if she did not cooperate against Tancredi "they would seek to have her deported." (FAC at ¶19).

Applying the standards of a cause of action for illegal seizure violations under *Shain*, the complaint simply fails to satisfy the basic obligations of a cause of action against DiGiacomo and Lucas. Indeed, there is no indication from the language of the complaint that either DiGiacomo or Lucas arrested or confined Saenz. As pleaded in ¶21 of the FAC, DiGiacomo and Lucas would have entered the room well after any alleged arrest occurred. *See generally*, *Universal Calvary Church v. City of New York*, 2000 WL 1538019 at n.37 (S.D.N.Y. Oct. 17, 2000)("Because Caliz was already arrested prior to that alleged imprisonment, the Court grants summary judgment as to this claim"). *See also*, *Merritt v. City of New York*, 2001 WL 1097866 (S.D.N.Y. Sept. 19, 2001)("By plaintiff's own testimony, Officer Bradbury did not arrive until well after the initial arrest had taken place; according to plaintiff, Bradbury only showed up once plaintiff had already reached the precinct…plaintiff may not assert a false arrest claim against Officer Bradbury") and *Dallas v. Goldberg*, 2000 WL 1092986 (S.D.N.Y. Aug. 4,

2000)(dismissing claim of false arrest against officer when Plaintiff was already handcuffed before officer arrived).

Since there are no allegations that DiGiacomo or Lucas confined Saenz or even that they refused to allow Saenz to leave the police station, the complaint cannot make out a cause of action against them for violation of Saenz's Fourth Amendment rights and as such the complaint must be dismissed as against DiGiacomo and Lucas.

## POINT III

## THE PLAINTIFF HAS FAILED TO IDENTIFY AN OFFICIAL POLICY, PRACTICE OR PROCEDURE THAT ALLEGEDLY GAVE RISE TO THE CONSTITUTIONAL VIOLATION

It is well established that in order to impose § 1983 liability against a municipal defendant such as Harrison, "the plaintiff must allege a link between the constitutional violation and an identifiable municipal policy, practice or custom." *Williams v. City of Mount Vernon*, 428 F.Supp.2d 146, 159 (S.D.N.Y. 2006) *citing*, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In so doing, a Plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Furthermore, as noted by this Court in *Goldfine v. Kelly*, 80 F.Supp.2d 153, 162, (S.D.N.Y. 2000) "[t]he mere assertion ··· that a municipality has such a custom or

policy is insufficient in the absence of allegations of fact tending to support …

such an inference." Absent the demonstration of such a policy, practice or

procedure, no suit can lie, since a municipality "cannot be liable simply because it

employed the [officers] who allegedly committed the acts in question." *Wilson v.*

*103rd Precinct*, 182 F.3d 902 (2d Cir. 1999) citing *Monell*, 436 U.S. 658, 691.

In the case at bar, Saenz has identified various acts purportedly committed

by parties and non-parties alike that she maintains resulted in a violation of her

rights under the Fourth Amendment. Additionally, Saenz chose to pursue a lawsuit

against Harrison their municipal employer. Since Harrison cannot be liable under

the doctrine of respondeat superior, Saenz would be required to articulate (in non-

conclusory fashion) a municipal policy, practice or procedure that gave rise to her

claims. As will be discussed below, the FAC fails in this regard as: (1) Captain

Marracini is not a state actor whose actions could be deemed as those of a

policymaker; (2) the FAC merely states in conclusory fashion that a policy exists

and (3) even taking the FAC at face value, the policy does not give rise to a cause

of action.

### A. The Elements of a Cause of Action for Monell Violations

As discussed above, in order to succeed in an action under 42 U.S.C. 1983, a

plaintiff "must plead and prove that the actions at issue were caused by an official

agency policy or practice which resulted in the violation of plaintiff's constitutional rights." *Hodge v. Ruperto,* 739 F.Supp. 873, 877, (S.D.N.Y. 1990). A complaint that fails in this regard is subject to dismissal. *See generally, Qader v. New York*, 396 F.Supp.2d 466, 469 (S.D.N.Y. 2005)("Plaintiff has not alleged a municipal policy or a causal connection and, therefore, her claim against the City must be dismissed"). As noted by this Court in *Prowisor v. Bon-Ton, Inc.,* 426 F.Supp.2d 165 (S.D.N.Y. 2006), to establish the existence of a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Id*. at 174.

In addition to stating the test to be applied in determining whether a cause of action under *Monell* has been pleaded, this Court also stressed the reason for such a detailed test, explaining that "[t]he doctrine of *respondeat superior* is insufficient to support a claim against a municipal employer, as are conclusory assertions of a custom or policy in the absence of factual allegations or inferences. *Id*. at 174, citing *Zahra v. Town of Southold,* 48 F.3d 674, 678 (2d Cir.1995).

**B. Saenz Has Not Properly Pleaded a Municipal Policy**

In the case at bar, the complaint details four episodes that purportedly indicate that Saenz's constitutional rights were violated by Harrison employees. However in relation to the municipal policy that purportedly gave rise to these actions, the complaint is virtually silent, merely alleging that the four episodes involving Saenz resulted from a purported policy of retaliating against her former boyfriend (Tancredi) for lawsuits he filed against Harrison. It is respectfully submitted that this is simply insufficient to meet the first part of the test outlined in *Prowisor*.

In relation to the pleading of a policy, this Court has noted that a complaint is insufficient when it contains "only conclusory allegations regarding the existence of a 'formal or de facto policy' on the part of the City with respect to the alleged constitutional violations of which they complain." *Williams v. City of Mount Vernon*, 428 F.Supp.2d 146, 159 (S.D.N.Y. 2006). Such a holding finds support in the Supreme Court's recent decision in *Twombly*, in which the Court required a showing of some facts in order to demonstrate the plausibility of the complaint. *See generally*, *Martino v. Westchester County Dept. of Corrections*, 2008 WL 144827 at *3 (S.D.N.Y. Jan. 15, 2008)(citing to *Twombly* for the principle that a "complaint is measured against a flexible 'plausibility standard,'

which obligates the "pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible").

In the instant matter, the supposed municipal policy is unsupported by any specific factual allegations in the complaint, other than the mere statement that the actions of the Town employees were pursuant to a policy of retaliating against Saenz's boyfriend for his lawsuit filed against Harrison. As there are no facts pleaded in support of such a theory and the alleged policy (even if it existed) was not even directed at Saenz, the first element of the four part test is not satisfied and the suit is subject to dismissal.

### C. Captain Marracini Is Not A Policymaker

The second element of the test outlined in *Prowisor* requiring the identification of a municipal policymaker is similarly not met by the FAC. There are no allegations that the officers who interviewed Saenz and purportedly did not allow her to leave or otherwise allegedly threatened her were policymakers. *See generally Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct, 1292, 89 L.Ed.2d 452 (1986). Indeed, the only allegation that a policymaker was actively involved in the purported violation was that the actions of Lucas and DiGiacomo were at the direction of Captain Marracini ("Marracini") who purportedly enjoys "final policymaking authority." (FAC at ¶4) . As will be discussed below, Captain

Marracini is not a policymaker and his purported direction of activities cannot serve as a basis for the imposition of municipal liability against Harrison.

In relation to the allegations that Lucas and DiGiacomo's conduct was at the direction of Marracini, the FAC fails in two respects. Initially, as discussed above, the complaint fails to properly allege that either Lucas or DiGiacomo took actions that resulted in violations of Saenz rights. Since the underlying acts purportedly committed by Lucas and DiGiacomo did not result in a violation of Saenz's rights, there can be no claim that Saenz was injured as a result of an unconstitutional municipal policy. *See generally, Vann v. City of New York,* 72 F.3d 1040, 1050 (2d Cir.1995) ("In order to establish the liability of a municipality in an action under §1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy").

Even assuming *arguendo* that Lucas and DiGiacomo had committed acts that would give rise to liability under 42 USC §1983, there is still no basis to impose municipal liability against Harrison since the complaint fails to identify any facts under *Twombly* that could plausibly label Marracini as a policymaker for purposes of *Monell*. In general, officers below the Commissioner or Sheriff level are not final policymakers. *See generally, Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986)(ruling that the Sheriff as "the highest ranking law enforcement official

in the County" was a policymaker). *See also, Allen v. City of New York*, 2007 WL

24796 (S.D.N.Y. Jan. 3, 2007)(ruling that Chief who was not delegated authority

to establish final city policy related to arrests and was not a policymaker).

In *Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003) the Second

Circuit examined a case with some similarities to the case at bar as the Plaintiff had

alleged that a Sergeant who had decision making authority over the conduct of

officers at the scene of an arrest was a policymaker. In ruling that the Sergeant was

not a final policymaker, the Second Circuit noted:

> Anthony likens Sergeant Mendez to the county sheriff in *Jeffes,*
> arguing that Sergeant Mendez had decision-making authority over the
> conduct of the officers at the scene. We think, however, that an
> elected county sheriff has significantly more responsibility in creating
> official policy than does a police sergeant in the NYPD. Anthony does
> not provide any analogue to the state-law authority that a county
> sheriff possesses, and instead argues only that Sergeant Mendez is a
> final decision-maker because he had discretion to determine how to
> handle the particular situation at Wright's apartment. But in *Jeffes,* we
> explicitly rejected the view that mere exercise of discretion was
> sufficient to establish municipal liability. *See id.* at 57 ("It does not
> suffice for these purposes that the official has been granted discretion
> in the performance of his duties." (citing *St. Louis v. Praprotnik,* 485
> U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988))). We
> accordingly reject Anthony's argument that Sergeant Mendez's order
> constitutes an official municipal policy.

*Id*. at 139-140.

Following the Second Circuit's pronouncement in *Anthony*, the New York

District Courts have consistently ruled that lower level police supervisors (even

those with discretion over the conduct of arrests) are not policymakers. *See*

*generally, Raphael v. County of Nassau*, 387 F.Supp.2d 127,132 (E.D.N.Y. 2005)(a Sergeant with decision making authority over the conduct of officers at the scene is not final policymaker). *See also, Diodatti v. City of Little Falls*, 2007 WL 189130 (N.D.N.Y. Jan. 22, 2007)(Sergeants are not final policymakers); *Esgro v. Serkiz*, 2007 WL 203957 (N.D.N.Y. Jan. 24, 2007)(Sergeant who directed officer to arrest Plaintiff was not policymaker); *Allan v. City of New York*, 386 F.Supp.2d 542 (S.D.N.Y. 2005)(Captain as ranking officer on scene who directed junior officers to arrest Plaintiff was not policymaker) and *Smith v. City of New York*, 2005 WL 1026551 (S.D.N.Y. May 3, 2005)(Captain not policymaker).

In this matter, the FAC merely states in conclusory fashion that the Chief has purportedly "abdicated" his responsibility and that all policy is set by Captain Marracini (FAC at ¶4). As the FAC does not contain any facts that could plausibly be construed as indicative that Marracini was a policymaker, his purported ordering of Lucas and DiGiacomo to act (assuming their actions even violated Saenz rights) can not serve as a basis for imposing municipal liability on Harrison.

### D. The Complaint Does Not Allege a Widespread Practice That Could Constitute Municipal Custom

The third prong of the test wherein municipal liability could be imposed (a showing of a widespread custom providing imputed knowledge to policymaking officials), requires a pleading of some facts tending to show the existence of such

policy. *See generally*, *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993)("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). *See also, Wilson v. 103rd Precinct*, 182 F.3d 902 (2d Cir. 1999)(affirming dismissal of complaint at 12(b)(6) stage, in part due to failure to state cause of action for *Monell* violations as "simple bald assertions and conclusions of law do not prevent dismissal of the complaint"). In this matter there are no allegations of fact that would demonstrate a widespread custom and support the imposition of liability under *Monell*.

As discussed above, the FAC's sole cause of action does not spell out how any individually named defendant (including Harrison) purportedly violated Saenz's rights under the Fourth Amendment (FAC at ¶24). Any understanding of the theory that would purportedly impose liability on Harrison must therefore be culled from the language of the allegations themselves. The only reference in the FAC to a municipal policy is contained in ¶10 wherein it is alleged that the actions of Mussolino and Jane Doe in attempting to "coerce" Saenz to testify against Tancredi was in retaliation for lawsuits filed by Tancredi against the Town and that this "retaliatory conduct is known to, and has been expressly condoned by, a majority of the members of the Town's Board of Police Commissioners which *de*

*jure* has final discretionary policy making authority over the Police Department and its administration." (FAC at ¶10).

The above referenced conduct cannot serve as a basis for liability as the FAC merely states in conclusory fashion that the retaliatory conduct is widespread and known to the Town Board of Police Commission without providing any facts to support the theory. *See generally, Carbajal v. County of Nassau*, 271 F.Supp.2d 415, 422 (E.D.N.Y. 2003)("mere conclusory allegations are insufficient when unsupported by facts showing that policymakers were aware of the constitutional violations and failed to properly respond"). Indeed, in *McCray v. City of New York*, 2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007) the court applied *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)(the Second Circuit's formulation of *Twombly*'s heightened pleading requirement) to grant a Rule 12(b)(6) motion to dismiss *Monell* claims, explaining that "while Plaintiffs enumerate multiple offensive policies or customs, they fail to allege facts that sufficiently render a claim based on the inference of such practices plausible." *See also, Williams v. New York City Housing Authority*, 2007 WL 4215876 (S.D.N.Y. Nov. 30, 2007)(dismissing *Monell* claim as Plaintiff had not provided enough factual allegations to make the claim plausible). Since the FAC does not meet the threshold of pleading any facts that could plausibly indicate

that Harrison's Board of Police Commissioners was aware of a retaliation policy and ignored it, the claim against Harrison cannot survive on this basis.[4]

Finally, even assuming that the complaint did properly allege a policy that the municipal policymakers were aware of but did not respond to, it cannot give rise to a claim of municipal liability since this purported policy was not directed at Saenz. Indeed, even giving the complaint's legal theories the most liberal possible reading, it could only be theoretically construed as pleading a theory that Harrison had a *de facto* policy of retaliating against parties for filing lawsuits against Harrison. However, Saenz has not filed any prior suits and does not allege that these actions were taken against her because of any lawsuit that she filed. Had Tancredi been the recipient of the alleged retaliatory behavior and had Tancredi been the Plaintiff in the instant lawsuit, then perhaps, he could make out a legal theory of a policy of retaliation. However, since Saenz is the plaintiff in the suit at bar there can be no allegations that her injuries resulted from a municipal policy of retaliating against those who bring lawsuits against Harrison. [5]

---

[4] It should also be noted that the complaint does not even offer generalizations that such retaliatory conduct has been visited on other Plaintiffs who had maintained lawsuits against Harrison. See generally, *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 128 (2d Cir. 2004)("There is, that is, no claim of a "relevant practice [that] is so widespread as to have the force of law" with regard to mothers of young children in positions like Back's").

[5] To the extent that the fourth element of the *Williams* test requires a showing of deliberate indifference to a failure to train it is not relevant to the case at bar as the Plaintiff has not alleged that any event arose from a lack of training.

## CONCLUSION

In light of the foregoing, Lucas, DiGiacomo and Harrison's motion to dismiss the complaint pursuant to FRCP 12(b)(6) should be granted in its entirety.

Dated:Purchase, New York
      March 7, 2008

            Respectfully submitted,
            FRIEDMAN, HARFENIST, LANGER & KRAUT
            Attorneys for Defendants
            TOWN/VILLAGE OF HARRISON
            2975 Westchester Avenue, Suite 415
            Purchase, New York  10577
            (914) 701-0800

            By:_____S_____
                Neil Torczyner