UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SOFIA SAENZ,

                         Plaintiff,            07 Civ. 10534 (WCC)

      -against-

EDWARD LUCAS, *et. al*,

                         Defendants.

-------------------------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS LUCAS, DiGIACOMO, AND THE TOWN/VILLAGE OF HARRISON MOTION TO DISMISS, PURSUANT TO FRCP 12(b)(6), THE FIRST AMENDED COMPLAINT

Preliminary Statement

This memorandum of law is submitted in opposition to the 12(b)(6) motion of Defendants Lucas, DiGiacomo and the Town/Village of Harrison to dismiss the first amended complaint (hereinafter "FAC").

The Presently Incontrovertible Facts as Alleged in the FAC

Pursuant to the direction of Captain Anthony Marraccini, Police Officers Edward Lucas, Mark DiGiacomo, Vincent Mussolino and Detective Richard Light jointly took retaliatory action against Plaintiff because Police Officer Ralph Tancredi (Plaintiff's former boyfriend) filed a series of federal civil rights actions against the Police Chief, the Police Captain, and *inter alia* the Town Village of Harrison (FAC at 4-6, 10).

1

That retaliatory conduct is known to, and has been expressly condoned by, a majority of the members of the Town's Board of Police Commissioners which *de jure* has final discretionary policy making authority over the Police Department and its administration (FAC, para. 10).[1]

Pursuant to that directive, and following an August 20, 2007, incident during which Plaintiff's then current boyfriend threatened to strike Tancredi in the head with a baseball bat (FAC at 8-9), Mussolino detained Plaintiff in a room at Police Headquarters for three hours with a view towards coercing her to bear witness against Tancredi - - as ordered by Marraccini (FAC at 10). Plaintiff did not consent to that confinement and made it clear to her captors that she had no interest in participating in their retaliatory plan against Tancredi. In that connection there was neither probable cause nor arguable probable cause to detain her, she was conscious of her confinement, did not consent to it, and the confinement was not otherwise privileged or authorized (FAC at 11).

Days thereafter Mussolino presented himself at Plaintiff's home and attempted to coerce her to sign documents as a predicate for issuance against Tancredi and in favor of Plaintiff of a temporary order of protection. Plaintiff refused to do so and as a result Mussolino directed her to call Assistant Westchester County District Attorney Barbara Eggenhauser (FAC at 12).

Eggenhauser, after being told by Plaintiff that she wanted nothing to do with the matter, made a series of threats to encourage her cooperation (FAC at 14). Eggenhauser there after confined Plaintiff to her (Eggenhauser's) office with a view towards coercing her cooperation (FAC at 15).

---

[1] As to Captain Marraccini, who issued the directive to retaliate, as a matter of fact he has final discretionary decision making authority with respect to the conduct of "investigations", such as the illegal one resulting from his order to retaliate (FAC at 4).

On a second occasion Eggenhauser, with the assistance of Light and Lucas, each threatened Plaintiff with deportation if she did not agree to help them prosecute Tancredi (FAC at 17-19).

Thereafter and on the pretext that he was driving Plaintiff home from a court appearance, Light instead transported her to Police Headquarters, placed her in a room where he was later joined by Lucas and DiGiacomo, and where, against her will, she was further interrogated with a view towards coercing her "cooperation" against Tancredi (FAC at 21).

With respect to the repeated confinements of Plaintiff at Headquarters and her confinement in Eggenhauser's office, Plaintiff did not consent, she was conscious of her confinements, there was no probable cause and/or arguable probable cause to imprison her, and the confinements were not otherwise privileged or authorized (FAC at 22).

Against this background Plaintiff claims damages from *inter alia* "repeated unlawful imprisonments" (FAC at 23).

## POINT I

### THE CLAIMS AGAINST LUCAS AND DiGIACOMO MUST BE TRIED TO A JURY

Hop-scotching over the presently indisputable facts, movants contend in the abstract that because Lucas and DiGiacomo entered the room where Light was holding Plaintiff prisoner (Memorandum at 8) they cannot be sued because a false arrest was committed by Light prior to their arrival. We disagree.

As a threshold matter, the FAC is framed not as a series of disjointed events - - as suggested by the movants, for obvious strategic reasons - - but rather as a series of related events that Police Captain Marraccini ordered Lucas, DiGiacomo, Light and Mussolino to engage in for purposes for coercing Plaintiff's otherwise unwilling cooperation in their scheme to punish Ralph Tancredi for exercising his rights as guaranteed by the First Amendment (FAC at 4).

Additionally, and notwithstanding movants' pretense to the contrary, the FAC expressly alleges that the misconduct as engaged in by all four officers was "known to, and has been expressly condoned by, a majority of the members of the Town's Board of Police Commissioners which *de jure* has final discretionary policy making authority over the Police Department and its administration (FAC at 10).

In short, each of the Defendants was acting jointly and in concert in accordance with a specifically directed plan of unlawful action, as approved by the Board of Police Commissioners. Each of the individually named Defendants, as co-conspirators, is of course responsible for the acts of all of them as taken in furtherance of the Board approved plan as directed by Marraccini. Beck v. Prupis, 529 U.S. 494, 503 (2000); Cofacredit v. Windson Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d cir. 1999).

## POINT II

### THE TOWN/VILLAGE OF HARRISON
### IS LIABLE GIVEN THE BOARD OF
### POLICE COMMISSIONERS' APPROVAL
### OF THE AT-ISSUE, UNLAWFUL CONDUCT

Pretending that the FAC does not allege the Board of Police Commissioners' approval of the unlawful conduct as set forth in that pleading, movants offer a variety of

canned arguments suggesting that the Town/Village has no exposure in this case. We disagree.

For it is axiomatic that a policy for purposes of <u>Monell</u> can be established by the single act of policy makers with final discretionary decision-making authority. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-1 (1986); <u>Beck v. Hastings on Hudson Union Free School District</u>, 365 F.3d 107, 128 (2d Cir. 2004); <u>Rookard v. Health & Hospitals Corporation</u>, 710 F.2d 41, 45 (2d Cir. 1983).

Since the Board of Police Commissioners is, as a matter of New York State law, vested with final discretionary decision making power over the Police Department [C. 812, New York L. 1936 as amended (Westchester Police Act governing administration of police departments in towns situated in Westchester County, New York, copy annexed in appendix; Section 5711-q of the New York State Unconsolidated Laws (governing administration of police departments in Villages within Westchester County)], the Town/Village is answerable in damages in this case under <u>Monell</u>.

<u>Conclusion</u>

The motion should in all respects be denied.

Dated: White Plains, N.Y.
      April 30, 2008

                    LOVETT & GOULD, LLP
                    By:
                    Jonathan Lovett (4854)
                    Attorneys for Plaintiff
                    222 Bloomingdale Road
                    White Plains, N.Y. 10605
                    914-428-8401

# A P P E N D I X

except by the consent of the board of trustees. Every village policeman shall keep a book in which shall be entered all services performed by him which are a town or county charge, and shall present claims therefor against the town or county to which chargeable. All orders or warrants for such claims, except those hereinabove specified, shall be made payable to the village treasurer, who shall collect the amount thereof.

§ 16. Retirement of policemen in certain villages. In any such village, a member of the police force whose compensation is a fixed salary, who shall have served a continuous term of employment as such of twenty years in one or more police departments in such county, or whose employment in two or more such terms shall in the aggregate amount to a total period of employment of twenty years, may, if unable to perform his regular duties in a manner satisfactory to the board of trustees of such village, be retired. A policeman so retired shall be paid one-half of the salary paid a member of such police department of the rank of retiring member for the year immediately preceding such retirement. Such payment shall in no case exceed one thousand dollars per annum and shall be paid out of moneys provided by such board of trustees to be levied and collected in the same manner as other village funds are levied and collected and shall not be subject to claims of creditors.

§ 17. This act shall take effect immediately.

---

# CHAPTER 104

AN ACT providing for the establishment, organization and operation of police departments in the towns of Westchester county

Became a law March 14, 1936, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Supersedes existing law.

Section 1. Establishment, organization and operation of town police departments in the county of Westchester. Notwithstanding any other provisions of law, the establishment, organization and operation and all matters concerning police or police departments in all towns in the county of Westchester shall be governed solely by the provisions of this act except that nothing herein shall be construed to prohibit the establishment of police pension funds in such towns in accordance with the provisions of chapter seven hundred ninety-one of the laws of nineteen hundred twenty-eight as amended. The employment of such policemen and special policemen shall continue to be in accordance with the rules of the state civil service commission as heretofore extended by it to the employment of policemen in the towns of Westchester county.

[1041]

§ 2. Establishment of town police departments. A. The town board of any town in Westchester county which now has a police force or police department, or employs police officers or policemen or which hereafter employs such policemen or police officers, shall establish a police department and appoint a chief of police, and such lieutenants, sergeants and patrolmen as may be needed and fix their compensation, except that it shall not be mandatory for a town which employs special policemen only for temporary periods of time in accordance with this act to establish a police department. The compensation of such policemen shall be a town charge. The town board may, at its option, determine that the town shall pay all or part of the cost of the uniforms and necessary equipment of its policemen. When appointed, such policemen shall be peace officers and shall have all the powers and be subject to all the duties and liabilities of a constable of such town in all criminal actions and proceedings and special proceedings of a criminal nature.

B. The town board of a town in which such a police department has been established at any time by resolution may establish a board of police commissioners for such town and appoint one or three police commissioners who shall at the time of their appointment and throughout their term of office be owners of record of real property in and electors of such town, and who shall serve without compensation, and at the pleasure of the town board. If the town board shall appoint only one such police commissioner, it shall in addition designate two members of the town board to serve as members of such police commission. When either of such boards of police commissioners shall have been established, such board of police commissioners shall have and exercise all the powers relative to police matters conferred upon the town board pursuant to this article. The town board may by resolution at any time abolish such police commission and thereupon the town board only shall exercise the powers conferred upon it by this article.

§ 3. Qualifications. No person shall be eligible to appointment or reappointment to such police department, nor continue as a member thereof, who shall not be a citizen of the United States, who has been convicted of a felony, who shall be unable to read and write understandingly the English language or who shall not have resided within the state of New York one year and in any town or village in Westchester county for six months next preceding his appointment. No person shall be appointed a member of such police force who is over the age of thirty-five years; provided, however, that a person who is serving as a town policeman who is over the age of thirty-five years and who possesses the above qualifications shall be eligible for appointment in such department, at the time of its organization only. No person shall be appointed a member of such police force unless he shall have passed an examination, held by the state civil service department, and unless at the time of his appointment his name shall be on the eligible list of the state civil service department.

§ 4. Promotion. Promotions of officers and members of such police department shall be made by the town board on the basis of seniority, meritorious police service and superior capacity as shown by competitive examination, such examination to be conducted by the state civil service department. Individual acts of personal bravery may be treated as an element of meritorious service in such examination. The town board shall keep a complete service record of each member of such police department in accordance with the rules and regulations of the state civil service department and shall transmit the record of each candidate for promotion to the state civil service department in advance of such examination. Notwithstanding any other special or general laws to the contrary, such promotion examination shall be competitive examinations held by the state civil service commission regardless of the number of candidates eligible for such promotion, and if the number of candidates is restricted to less than four by the action of the town board, and if the names of one or more candidates are certified as having passed such examination, such name or names shall constitute an eligible list under the civil service law. In no case shall the requirements for service for the respective offices be for longer periods than the following periods of time: for the office of chief, one year as lieutenant or two years as sergeant or three years as patrolman; for the office of lieutenant, one year as sergeant or two years as patrolman; for the office of sergeant, one year as patrolman. No person shall be eligible to take such promotion examination unless he is serving as a policeman on the police force of a town or village in Westchester county.

§ 5. Transfers. Transfers from one town police department to another town or village police department in the county may be made upon the mutual consent of the appointing officers of the departments affected. Any member of such police force who is or has been transferred shall receive credit with the town department to which he is transferred for time served on the police force or in the department of any village or town within the county, as though the full time had been served with the department to which he has been transferred, for purposes of seniority, promotion, pensions and general administration.

§ 6. Administration. The town board may make, adopt and enforce rules, orders and regulations for the government, discipline, administration and disposition of the police department and of the members thereof. Such rules and regulations and all amendments thereto shall be in writing and shall be posted in a conspicuous place in the police headquarters. Each member of the department shall receive a copy thereof and of all amendments thereto.

§ 7. Discipline and charges. Except as otherwise provided by law, a member of such police department shall continue in office unless suspended or dismissed in the manner hereinafter provided. The town board shall have the power and authority to adopt and make rules and regulations for the examination, hearing, investiga-

tion and determination of charges, made or preferred against any member or members of such police department. Except as otherwise provided by law, no member or members of such police department shall be fined, reprimanded, removed or dismissed until written charges shall have been examined, heard and investigated in such manner or by such procedure, practice, examination and investigation as the board, by rules and regulations from time to time, may prescribe. Such charges shall not be brought more than sixty days after the time when the facts upon which such charges are based are known to the town board. Any member of such police department at the time of the hearing or trial of such charges shall have the right to a public hearing and trial and to be represented by counsel; no person who shall have preferred such charges or any part of the same shall sit as judge upon such hearing or trial. Witnesses upon the trial of such charges shall testify thereto under oath. No member of such department who shall have been dismissed shall be reinstated unless he shall, within twelve months of his dismissal, file with such board a written application for a rehearing of the charges upon which he was dismissed. Such board shall have the power to rehear such charges and, in its discretion, may reinstate a member of the force after he has filed such written application therefor.

Any member of such department found guilty upon charges, after five days' notice and an opportunity to be heard in his defense, of neglect or dereliction in the performance of official duty, or of violation of rules or regulations or disobedience, or of incompetency to perform official duty, or of an act of delinquency seriously affecting his general character or fitness for office, may be punished by the town board having jurisdiction, by reprimand, by forfeiture and withholding of salary or compensation for a specified time not exceeding twenty days, by extra tours or hours of duty during a specified period not exceeding twenty days, by suspension from duty for a specified time not exceeding twenty days and the withholding of salary or compensation during such suspension, or by dismissal from the department. Such board shall have the power to suspend, without pay, pending the trial of charges, any member of such police department. If any member of such police department so suspended shall not be convicted of the charges so preferred, he shall be entitled to full pay from the date of suspension. The conviction of a member of such police department by the town board shall be subject to review by certiorari to the supreme court in the judicial district in which such town is located, provided that application therefor be made within thirty days from the determination of such conviction by the town board.

§ 8. **Effect of resignation.** Any member of such department who shall resign shall not be reinstated by such board unless he shall make written application, within twelve months of his resignation, for reappointment as a member of such department.

§ 9. **Absentee leave.** Every member of such police department shall be entitled, in addition to any vacation or absentee leave now

prescribed by law, to one day of rest in seven. The chief or acting chief of the police department shall keep a time book showing the name and shield number of each member of the department and the hours worked by each of such policemen in each day. The town board may make a variation from the above prescribed hours of vacation, provided the member shall receive during each year the actual number of days absentee leave to which he is entitled. The town board, at its option, may, in addition to the days of rest herein-before provided, grant an annual vacation with pay. Whenever the town board shall designate any policeman to attend police school, such attendance shall be deemed in the course of duty and when so attending he shall receive his usual pay and reimbursement for actual and necessary expenses. Sick leave with full pay may be granted whenever such sickness or disability has been incurred without the delinquency of the policeman.

§ 10. Special policemen. The town board of any such town, whether there be a police department in and for such town or not, may employ temporary police officers from time to time as the town board may determine their services necessary. Such police officers shall be known as "special policemen" and shall have all the power and authority conferred upon constables by the general laws of the state and such additional powers, not inconsistent with law, as shall be conferred upon them by the town board. They shall be subject to the general authority and direction of the town board and to such orders and regulations as the town board may prescribe, not inconsistent with law. Such special policemen shall serve at the pleasure of the town board and the town board shall fix their compensation and may purchase uniforms and equipment therefor but no such special policemen shall be appointed nor any expense incurred by reason thereof unless said town board shall have provided therefor in its annual budget, previously adopted, and no expenditure shall be made in excess of the budget appropriation therefor. Such special police shall not be eligible to appointment unless they shall have passed an examination held by the state civil service commission, and unless their names shall be on the eligible list of the said commission at the time of their appointment, and unless such special policemen possess the qualifications set forth in section three of this act.

§ 11. Hours of duty and vacations. In the police department of all such towns, a day's tour of duty shall consist of not more than eight consecutive hours in each twenty-four except in the case of a public emergency. Every member of such police department shall be allowed an annual vacation of not less than fourteen consecutive days without diminution of salary or compensation as fixed by or pursuant to law, except in case of public emergency. In the event of a public emergency during which the vacation or portion of a vacation of a member shall have been withheld, upon the cessation of such emergency, such member shall then receive with pay the number of days of such vacation withheld.

§ 12. This act shall take effect immediately.

# CHAPTER 105

AN ACT to amend the religious corporations law, in relation to incorporation of parishes or churches of the Holy Orthodox Churches in America

Became a law March 16, 1936, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Chapter fifty-three of the laws of nineteen hundred nine, entitled "An act in relation to religious corporations, constituting chapter fifty-one of the consolidated laws," is hereby amended by inserting therein a new article, to be article three-b, to read as follows:

New art. 3-b added (§§ 50-aa, 50-bb, 50-cc, 50-dd, 50-ee, 50-ff, 50-gg, 50-hh, 50-ii, 50-jj, 50-kk, 50-ll, 50-mm).

## ARTICLE 3-b

PARISHES OR CHURCHES OF THE HOLY ORTHODOX CHURCH IN AMERICA

Section 50-aa. Application for incorporation.
    50-bb. Notice of meeting for incorporation.
    50-cc. Provisions governing meetings for incorporation.
    50-dd. Resolution to be adopted at incorporation meeting.
    50-ee. Certificate of incorporation.
    50-ff. Annual and special corporate meetings.
    50-gg. Changing date of annual corporate meetings.
    50-hh. Changing number of laymen trustees.
    50-ii. Meetings of trustees.
    50-jj. Vacancies among trustees.
    50-kk. Rector; vicar; ministers; their appointment, removal and compensation.
    50-ll. Additional qualifications of voters at annual and special corporate meetings.
    50-mm. Transfer of property of extinct parishes and churches.

§ 50-aa. Application for incorporation. An unincorporated congregation of the Holy Orthodox Church in America, or a congregation acknowledging the historic apostolic eastern confession and order in this state, may apply to the archbishop who is the ecclesiastical * administrator of Metropolitan Synod, Holy Orthodox Church in America for permission and sanction to incorporate such church. When such permission aforesaid has been obtained in writing over the signature and seal of such archbishop, such church may become an incorporated church by executing, acknowledging and filing a certificate of incorporation as hereinafter provided.

Any religious order, biblical seminary for the preparation of candidates for the ministry, leading to ordination and

---

* So in original. (Word misspelled.)

relative thereto shall be complied with. Upon completion thereof he shall submit them to the county superintendent of highways, who, if he approves them in writing, shall notify the board of supervisors of such approval.

§ 6. The board of supervisors may, after receipt of such approval, allocate and appropriate as provided in section two of this act not to exceed twenty per centum of the funds received in any fiscal year by the county treasurer of the county of Monroe pursuant to the provisions of article twelve-a of the tax law and section seventy-three of the vehicle and traffic law, to be used to pay not to exceed seventy-five per centum of said estimated costs of such work in such public streets.

§ 7. In the event such appropriation is made by the board of supervisors, the council of the city of Rochester may, not later than sixty days from the making of such appropriation and allocation, provide by ordinance for the doing of such work and the charging to the county of Monroe seventy-five per centum of the cost of such work but not in excess of the amount of such appropriation and allocation. Said work shall be done in accordance with the provisions of the charter of the city of Rochester. The county superintendent of highways shall inspect the work while in progress from time to time and also upon completion thereof.

§ 8. Upon completion of such work the commissioner of public works shall file with the city clerk, the clerk of the board of supervisors and the county superintendent of highways, a certificate of completion which shall state: a brief description of the work; that it was done pursuant to this law; that it is completed in accordance with the specifications approved by the county superintendent of highways; the cost thereof, and the part of the cost to be paid by the county of Monroe. The county superintendent of highways shall audit the cost and for that purpose shall have access to all necessary city records. If he finds the work is completed in accordance with the specifications, he shall certify to the county treasurer: (a) a brief description of the work; (b) that it was done pursuant to this law; (c) that the work is completed in accordance with specifications approved by him; (d) the total cost of the work; (e) the part of the cost of the work to be paid by the county of Monroe. The county treasurer shall thereupon pay said amount to the treasurer of the city of Rochester upon duly executed vouchers in the same manner as other county road expenditures are made. The amount that the part of the cost according to such certificate to be paid by the county of Monroe is in excess of the amount allocated and appropriated for such work by the board of supervisors, pursuant to section two of this act, shall be borne by the city of Rochester and any amount by which such allocation and appropriation exceeds the part of the cost according to such certificate to be paid by the county of Monroe shall revert to the funds received as described in section two of this act and shall be subject to reappropriation on distribution.

§ 9. While said work is in progress, the commissioner of public

§12]

works may, in consultation with the county superintendent of highways, effect minor changes in plans and specifications when he and the county superintendent of highways find that such changes would promote the public interest.

§ 10. The provisions of all statutes requiring and providing for distribution by the board of supervisors of the county of Monroe of funds received by the Monroe county treasurer pursuant to the provisions of article twelve-a of the tax law and section seventy-three of the vehicle and traffic law are hereby changed, modified and superseded to the extent of the allocations of the portion of such funds by the board of supervisors of Monroe county pursuant to the provisions of this act and all provisions of such other statutes providing for and requiring distribution of funds so received shall apply only to such funds so received less payments made to the city of Rochester pursuant to this act.

§ 11. This act shall take effect immediately.

---

# CHAPTER 812

AN ACT to amend chapter one hundred and four of the laws of nineteen hundred thirty-six, entitled "An act providing for the establishment, organization and operation of police departments in the towns of Westchester county," generally

Became a law April 27, 1941, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision B of section two, sections four and seven of chapter one hundred and four of the laws of nineteen hundred thirty-six, entitled "An act providing for the establishment, organization and operation of police departments in the towns of Westchester county," are hereby amended to read as follows:

B. The town board of a town in which such a police department has been established shall be the board of police commissioners, except that at any time by resolution said town board may establish a board of police commissioners for such town and appoint one or three police commissioners who shall at the time of their appointment and throughout their term of office be owners of record of real property in and electors of such town, and who shall serve without compensation, and at the pleasure of the town board. If the town board shall appoint only one such police commissioner, it shall in addition designate two members of the town board to serve as members of such police commission. When either of such boards of police commissioners shall have been established, such board of police commissioners shall have and exercise all the powers relative to police matters conferred upon the town board pursuant to this article. The town board may by resolution at any time abolish such police commission and there-

... ... town board only shall exercise the powers conferred upon it by this article.[1]

§ 4.
Amended.

*4. Promotion. Promotions of officers and members of such police department shall be made, and all vacancies above the grade of patrolman filled whenever possible by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists, by the town board on the basis of seniority, meritorious police service and superior capacity as shown by competitive examination, such examination to be conducted by the state civil service department. Individual acts of personal bravery may be treated as an element of meritorious service in such examination. The town board shall keep a complete service record of each member of such police department in accordance with the rules and regulations of the state civil service department and shall transmit the record of each candidate for promotion to the state civil service department in advance of such examination. Notwithstanding any other special or general laws to the contrary, such promotion examination shall be competitive examinations held by the state civil service commission regardless of the number of candidates eligible for such promotion, and if the number of candidates is restricted to less than four by the action of the town board, and if the names of one or more candidates are certified as having passed such examination, such name or names shall constitute an eligible list under the civil service law. In no case shall the requirements for service for the respective offices be for longer periods than the following periods of time: for the office of chief, one year as lieutenant or two years as sergeant or three years as patrolman; for the office of lieutenant, one year as sergeant or two years as patrolman; for the office of sergeant, one year as patrolman. No person shall be eligible to take such promotion examination unless he is serving as a policeman on the police force of a town or village in Westchester county.

§ 7.
amended.

§ 7. Discipline and charges. Except as otherwise provided by law, a member of such police department shall continue in office unless suspended or dismissed. The town board or board of police commissioners shall have power and is authorized to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member or members of such police department, but no member or members of such police department shall be fined, reprimanded, removed or dismissed until written charges shall have been investigated, examined, heard and determined by such town board or board of police commissioners in such manner, procedure, practice, examination and investigation as such board may, by such rules and regulations from time to time prescribe, except that the trial of such charges shall not be delegated and must be heard before the full town board or full board of police commissioners or a majority of the members of either of such boards, and the affirmative vote of a majority of such members shall be necessary for a conviction on

---

[1] Amendments throughout chapter too numerous to indicate by footnotes.
* So in original. ["§" evidently omitted.]

any such charges. Such charges shall not be brought more than ninety days after the time when the facts upon which such charges are based are known to such town board or board of police commissioners. Any member of such police department at the time of the hearing or trial of such charges before such town board or board of police commissioners shall have the right to a public hearing and trial and to be represented by counsel at any such hearing or trial and any person who shall have preferred such charges or any part of the same shall not sit as a member of such town board or board of police commissioners upon such hearing or trial and any and all witnesses produced upon the trial shall testify under oath.

Any member of such department found guilty upon charges after five days' written notice and an opportunity to be heard in his defense, of neglect or dereliction in the performance of official duty, or violation of rules or regulations or disobedience, or incompetency to perform official duty, or an act of delinquency seriously affecting his general character or fitness for office, may be punished by such town board or board of police commissioners before which such charges are tried, by reprimand, forfeiture and the withholding of salary or compensation for a specified time not exceeding twenty days, by suspension from duty for a specified time not exceeding twenty days and the withholding of salary or compensation during such suspension, or by dismissal from the department. Such town board or board of police commissioners shall have the power to suspend, without pay, pending the trial of charges, any member of such police department. If any member of such police department so suspended shall not be convicted by such board of the charges so preferred, or if on review his conviction shall be reversed, then, notwithstanding such charges and suspension, he shall be entitled to full pay from the date of suspension to the date of reinstatement less the amount of compensation, if any, received by him from any other employment or occupation during the period beginning with such date of suspension to the date of his reinstatement and he shall be entitled to an order as provided in article seventy-eight of the civil practice act to enforce such payment.

§ 2. Section eight of such chapter is hereby repealed and a new §8. repealed. section eight is hereby inserted, to read as follows: new §8. added.

§ 8. Review of convictions. The conviction of any member of such police force shall be subject to review, as provided in article seventy-eight of the civil practice act, in a proceeding in the supreme court in the judicial district in which such town is located, provided a verified petition for such a review, setting forth that said conviction is illegal and specifying the grounds of illegality, be presented to the court within sixty days after the conviction.

§ 3. Section nine of such chapter is hereby renumbered section §9. renumbered eleven and a new section nine is hereby inserted, to read as follows: §11.

§ 9. Reinstatement after dismissal. Any member of such police new §9. force who shall have been so dismissed or who is hereafter dis-

[CH...

missed, may be reinstated as a member of such police force, whether he has made application for a review, as authorized in the preceding section or not, provided he shall within twelve months of his dismissal file with such board a written application for rehearing of the charges upon which he was dismissed. Such board shall have the power to rehear such charges and in its discretion reinstate a member of the force after he has filed such written application therefor.

§ 10.
renumbered
§ 17.
New § 10.
added.

§ 4. Section ten of such chapter as last amended by chapter one hundred and ninety-two and seven hundred and thirty-six of the laws of nineteen hundred thirty-nine, is hereby renumbered section seventeen and a new section ten is hereby inserted, to read as follows:

§ 10. Reinstatement after resignation. Any member of such force, who shall resign, shall not be reinstated by such board unless he shall make written application, within twelve months of his resignation, to such board for reappointment as a member of such force.

§ 11.
renumbered
§ 14.
New § 11.
amended.

§ 5. Section eleven of such chapter is hereby renumbered section fourteen and section nine of such chapter, as hereby renumbered section eleven, is hereby amended to read as follows:

§ 11. Absentee leave. Every member of such police department shall be entitled, in addition to any vacation or absentee leave now prescribed by law, to one day of rest in seven. The chief or acting chief of the police department shall keep a time book showing the name and shield number of each member of the department and the hours worked by each of such policemen in each day. In case of public emergency the town board or board of police commissioners may make a variation from the above hours of vacation, provided the member shall receive during each year the actual number of days absentee leave to which he is entitled. Whenever the town board or board of police commissioners shall designate any policeman to attend police school, such attendance shall be deemed in the course of duty and when so attending he shall receive his usual pay and reimbursement for actual and necessary expenses. Sick leave with full pay may be granted whenever such sickness or disability has been incurred without the delinquency of the policeman.

New § 14.
amended.

§ 6. Section eleven of such chapter, as renumbered section fourteen by this chapter, is hereby amended to read as follows:

§ 14. Hours of duty and vacations. In all such police departments of all towns, a day's tour of duty shall consist of not more than eight consecutive hours in each twenty-four, in no case to exceed forty-eight hours in any week, except in the case of a public emergency. Every member of such police department shall be allowed an annual vacation of not less than fourteen consecutive days without diminution of salary or compensation as fixed by or pursuant to law, except in case of public emergency. In the event of a public emergency during which the vacation or portion of a vacation of a member shall have been withheld, upon the cessation

of such emergency, such member shall then receive with pay the number of days of such vacation withheld.

§ 7. Such chapter is hereby amended by inserting therein two new sections, to be sections fifteen and sixteen, to read respectively, as follows:

§ 15. **Uniformity.** All patrolmen who shall have served four years or upwards on such police force shall be patrolmen of the first grade. The annual salary and compensation of the men of such town police force shall be uniform in accordance with their rank and grade except as provided by section twelve of this chapter.

§ 16. **Composition of police force; duties and powers.** Until otherwise provided by law, the police force in the police department of such town shall consist of a chief of police, and such lieutenants of police, sergeants of police and patrolmen as may be needed. The chief of police of such town shall be the commanding officer of the police force. He shall be chargeable with and responsible for the execution of all laws and rules and regulations of the department. Subject to the approval of the town board or board of police commissioners, he shall assign to duty the officers and members of the police force, and shall have power to change such assignments from time to time whenever, in his judgment, the exigencies of the service may require such change, provided, however, that officers and members of the police force only hereafter shall be assigned to police duty. He shall, with the consent of the town board or board of police commissioners have power to relieve from active duty on patrol any member of the police force who, while in the actual performance of duty and without fault or misconduct on his part, shall have become disabled physically as a result of injuries or illness incurred in the line of duty, so as to be unfit to perform full police duty, and such disability having been certified to by so many of the police surgeons as the board may require, and assign such member to the performance of such light duties as he may be qualified to perform. Subject to the approval of the town board or board of police commissioners, he shall have the power to suspend without pay, pending investigation of charges by the board, any member of the police force. If any member of the police force so suspended shall not be convicted by the town board or board of police commissioners of the charges so preferred, he shall be entitled to full pay from the date of suspension, notwithstanding such charges and suspensions.

§ 8. Section seventeen of such chapter, as thus renumbered by this chapter and last amended by chapters one hundred and ninety-two and seven hundred and thirty-six of the laws of nineteen hundred thirty-nine, is hereby amended to read as follows:

§ 17. **Special policemen.** The town board of any such town, whether there be a police department in and for such town or not, may employ temporary police officers from time to time as the town board may determine their services necessary. Such police officers shall be known as "special policemen" and shall have all the power and authority conferred upon constables by

the general laws of the state and such additional powers, not inconsistent with law, as shall be conferred upon them by the town board. They shall be subject to the general authority and direction of the town board and to such orders and regulations as the town board may prescribe, not inconsistent with law. Such special policemen shall serve at the pleasure of the town board and the town board shall fix their compensation and may purchase uniforms and equipment therefor but no such special policemen shall be appointed nor any expense incurred by reason thereof unless such town board shall have provided therefor in its annual budget, previously adopted, and no expenditure shall be made in excess of the budget appropriation therefor. Such special police shall not be eligible to appointment unless they shall have passed an examination held by the state civil service commission, and unless their names shall be on the eligible list of the said commission at the time of their appointment, and unless such special policemen possess the qualifications set forth in section three of this act; provided, however, that persons who have been appointed from a civil service list as policemen or special policemen and who have served as such for a period of not less than two years shall be eligible for appointment as policemen in the town in which the service has been rendered where such town shall establish a police department pursuant to the provisions of this chapter at any time prior to the first day of February, nineteen hundred forty. The compensation of such special policemen and the expense of the uniforms and equipment therefor if purchased by the town, shall be a charge against the taxable property of that part of the town outside any incorporated village or villages having and maintaining a village police department or village police force, to be assessed, levied and collected in the town in the same manner as other town charges.

§ 9. This act shall take effect immediately.

———————

# CHAPTER 813

AN ACT legalizing and validating the acts and proceedings of the supervisor, town board and officials of the town of Mount Pleasant, county of Westchester, relative to the sales held in the years nineteen hundred thirty-six, nineteen hundred thirty-seven, nineteen hundred thirty-eight and nineteen hundred forty of tax liens for taxes in said town; providing a statute of limitations upon the commencement of actions to attack or the defense of actions to sustain the validity of such sales, and making all proceedings had in connection with such sales conclusively valid at the expiration of the period of limitation

Became a law April 27, 1941, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Mount Pleasant, town tax sales.

Section 1. All acts and proceedings of the supervisor, town board and officials of the town of Mount Pleasant, county of West-

§10]                    LAWS OF NEW YORK, ----

chester, and of any officers of said town heretofore had and taken
or caused to be had and taken in relation to the sales held in such
town in the years nineteen hundred thirty-six, nineteen hundred
thirty-seven, nineteen hundred thirty-eight, nineteen hundred
thirty-nine and nineteen hundred forty of tax liens, entitled to be
sold under the provisions of chapter one hundred and five of the
laws of nineteen hundred sixteen, as amended, for armory and
court expenses, county, town and highway taxes, town and county
district taxes and assessments, water rents and school and other
taxes and assessments, including the publication and posting of
notices of such sales, are hereby legalized and validated and con-
firmed notwithstanding and so as to cure, remedy and correct all
defects and irregularities therein.

§ 2. Any action or proceeding to contest the validity or regu-
larity of a transfer of tax lien heretofore issued based on such
sales of tax liens in the town of Mount Pleasant held in the years
nineteen hundred thirty-six, nineteen hundred thirty-seven, nine-
teen hundred thirty-eight, nineteen hundred thirty-nine and nine-
teen hundred forty, including all proceedings prior to the sale, the
levy and assessment of the taxes, the posting and publication of all
notices and the sales themselves and the proceedings following the
sales upon which said transfers are based must be commenced
within six months from the date this act takes effect or be forever
barred.

§ 3. In an action or proceeding to enforce any right, title or
interest in real property based upon a transfer of tax lien hereto-
fore made and issued by the supervisor of the town of Mount
Pleasant under and by virtue of such sales of tax liens in such
town held in the years nineteen hundred thirty-six, nineteen hun-
dred thirty-seven, nineteen hundred thirty-eight, nineteen hundred
thirty-nine and nineteen hundred forty, the invalidity or irregu-
larity of such transfer of tax lien, due to any proceeding prior to
the sales, the levy and assessment of the taxes, the posting and
publication of all notices and the sales themselves or the proceed-
ings following the sales upon which said transfers are based shall
not be interposed or be available as a defense after six months from
the date this act takes effect.

§ 4. All transfers of tax liens heretofore issued by the super-
visor of the town of Mount Pleasant under and by virtue of the
sales held in the years nineteen hundred thirty-six, nineteen hun-
dred thirty-seven, nineteen hundred thirty-eight, nineteen hundred
thirty-nine and nineteen hundred forty of tax liens for taxes in
said town shall, six months after the date this act takes effect, be
deemed conclusive evidence that all proceedings prior to the sales,
including the levy and assessment of the taxes upon which the
sales are based, the posting and publication of all notices and the
sales and all proceedings following the sales were and are valid.

§ 5. If any clause, sentence, paragraph, section or part of this
act shall be adjudged invalid by any court of competent jurisdic-
tion, such judgment shall not affect, impair or invalidate the

60