UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
SOFIA SAENZ,                                            07 CIV 10534 (WCC)

                              Plaintiffs,

    -against-

EDWARD LUCAS, individually, VINCENT
MUSSOLINO, individually, RICHARD
LIGHT, individually, MARK DiGIACOMO,
individually, POLICE OFFICER JANE DOE,
individually, and the TOWN/VILLAGE OF
HARRISON, New York,

                              Defendants.
---------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF EDWARD LUCAS AND MARK DIGIACOMO'S MOTION FOR RECONSIDERATION

**FRIEDMAN, HARFENIST, KRAUT & PERLSTEIN**
**Attorneys for Defendants**
2975 Westchester Avenue, Suite 415
Purchase, New York  10577
(914) 701-0800

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... i

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS ............................................................................. 3

PROCEDURAL HISTORY ........................................................................... 4

POINT I

  THE LEGAL STANDARD FOR A
  MOTION FOR RECONSIDERATION ....................................................... 6

POINT II

  THE FAC CANNOT BE CONSTRUCTED TO
  ALLEGE THAT LUCAS AND DIGIACOMO
  EFFECTUATED A SEIZURE OF THE PLAINTIFF ................................ 8

    A. THE PLAINIFF COULD NOT HAVE SUSTAINED A LESSER
       SEIZURE AFTER SHE WAS ALREADY ARRESTED ............. 8

    B. THE INCIDENT IN EGGENHAUSER'S OFFICE DID NOT
       VIOLATE THE PLAINTIFF'S RIGHTS ................................... 13

CONCLUSION………………………………………………………...15

# TABLE OF AUTHORITIES

**Cases**

*Beck v. Prupis*, 529 U.S. 494, 503, 120 S.Ct 1608, 146 L.Ed.2d 561 (2000) .............................. 5
*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir. 1999) .................. 5
*Dallas v. Goldberg*, 2000 WL 1092986 (S.D.N.Y. Aug. 4, 2000) ................................................. 11
*Estevez v. City of Philadelphia*, 2007 WL 707358 (E.D. Pa. Mar. 2, 2007) ................................ 11
*Gilles v. Repicky*, 511 F.3d 239, 245 (2d Cir 2007) ..................................................................... 14
*Hickey v. City of New York*, 2002 WL 1974058 (S.D.N.Y. Aug. 6, 2002) ................................... 13
*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ....................................................................... 13
*I.N.S. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) ........................... passim
*Mahmud v. Kaufmann*, 496 F.Supp.2d 266, 270 (S.D.N.Y. 2007) .................................................. 7
*Merritt v. City of New York*, 2001 WL 1097866 (S.D.N.Y. Sept. 19, 2001) ................................. 11
*Mikol v. Barnhart*, __ F.Supp.2d __, 2008 WL 2115396 (May 16, 2008) ..................................... 7
*Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991) .......................................................................... 10
*Purdy v. Greenburgh*, 178 F.Supp.2d 439, 441 (S.D.N.Y. 2002). ................................................. 7
*Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ......................................... 7
*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ................................................. 9
*Universal Calvary Church v. City of New York*, 2000 WL 1538019
(S.D.N.Y. Oct. 17, 2000) .............................................................................................................. 11
*US Fidelity and Guaranty Co. v. Frosty Bites, Inc.*, 350 F.Supp.2d 508 (S.D.N.Y. 2004) ............ 7
*U.S. v. Hooper*, 935 F.2d 484, 489 (2d Cir. 1991) ....................................................................... 10
*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ............................ 7
*Yarris v. County of Delaware*, 465 F.3d 129 (3d Cir. 2006) ....................................................... 12

**Statutes**

42 U.S.C. §1983 .......................................................................................................................... 4, 14

## PRELIMINARY STATEMENT

The instant matter is before the Court on Defendants' Edward Lucas ("Lucas") and Mark DiGiacomo ("DiGiacomo") motion for reconsideration pursuant to Local Rule 6.3 of this Court's July 9, 2008 decision[1] denying their motion to dismiss Plaintiff Sofia Saenz's ("Plaintiff") first amended complaint ("FAC") pursuant to FRCP 12(b)(6) for failure to state a cause of action.[2]

In moving to dismiss the FAC, Lucas and DiGiacomo argued that Plaintiff had failed to state a cause of action against them because the FAC's only factual references to their conduct indicated that they entered various locations after Saenz had already been seized. In support of their argument, Lucas and DiGiacomo cited to relevant Southern District cases in which sister courts had ruled that an officer cannot be held liable for violating a person's right to be free from illegal seizure under the Fourth Amendment after the individual was already arrested. In opposing the motion, the Plaintiff argued that the FAC should not be dismissed as Lucas and DiGiacomo purportedly "conspired" with the other officers and therefore were responsible for the acts of the other officers.

---

[1] Although the Court's decision indicates on the last page that it is dated June 9, 2008, the decision was only docketed on the docket sheet on July 9, 2008 and the docket sheet entry indicates that the decision was signed by Judge Conner on July 9, 2008. A copy of the decision is appended to the motion for reconsideration as Exhibit "A".

[2] The original motion to dismiss was filed on behalf of Lucas, DiGiacomo and the Town/Village of Harrison, New York. The instant motion for reconsideration is submitted solely on behalf of Lucas and DiGiacomo.

1

In determining the motion the Court indicated that despite the fact that Lucas and DiGiacomo entered the room where the Plaintiff was held after she had already been told that she may not leave, there could still be a cause of action for unreasonable seizure as the Fourth Amendment guarantees protection against unreasonable seizures that do not amount to arrests. (Decision at 7-8).

It is respectfully submitted that in reaching its conclusion that the FAC stated a cause of action against Lucas and DiGiacomo, the Court misapplied the precedent interpreting the Fourth Amendment. The events that the FAC describes which involve Lucas and DiGiacomo plainly indicate that the Plaintiff was aware that she was not free to leave prior to Lucas and DiGiacomo's involvement. Given the fact that the Plaintiff had already been arrested, there could not be lesser violations of her Fourth Amendment rights related to conduct that could only be described as "less than a seizure." As borne out by case law, since the Plaintiff had already been seized prior to her interaction with Lucas & DiGiacomo, the FAC cannot be construed as maintaining a cause of action against Lucas and DiGiacomo and as such their motion should have been granted.

## STATEMENT OF FACTS[3]

The FAC alleges two incidents that purportedly involved conduct by Lucas and DiGiacomo. The first relevant incident occurred in the office of non-party, Barbara Eggenhauser[4] ("Eggenhauser"), a Westchester County Assistant District Attorney.[5] (FAC at ¶16). During this meeting, Eggenhauser purportedly acting in concert with Lucas and Light instructed Plaintiff that she had been abused by Tancredi and further asked Plaintiff about Tancredi's cocaine addiction. (Complaint at ¶16). The FAC alleges that during the meeting, Light supposedly told Plaintiff that Tancredi had called Plaintiff a "coke whore" (FAC at ¶17) and that Lucas advised Plaintiff that Tancredi was a thief. (FAC at ¶18). Lastly, the FAC alleges that the three individuals made "not so subtle threats" that if Plaintiff did not cooperate they would seek to have her deported. (FAC at ¶19). The FAC contains no allegations that Plaintiff asked to leave Eggenhauser's office during

---

[3] As the instant motion seeks reconsideration of a motion made pursuant to FRCP 12(b)(6) all factual statements are derived wholly from the FAC, which must be presumed by the Court to be true at this juncture. Since this motion only seeks review of the determination as it relates to the cause of action against Lucas and DiGiacomo, only the factual portions of the complaint which relate to the actions of Lucas and DiGiacomo are discussed herein. The defendants do not admit the truth of these statements and only make reference to them for the purposes of this motion. A copy of the FAC is appended to this submission as Exhibit "B".

[4] Eggenhauser was named as a defendant in the original complaint. However, during the pre-motion conference on February 1, 2008, Saenz agreed to voluntarily discontinue the action against Eggenhauser without prejudice and as such she is not named as a party in the FAC.

[5] The FAC actually details two incidents that purportedly occurred in Eggenhauser's office. The first event (detailed in ¶¶13-15) did involve allegations that Plaintiff was confined in Eggenhauser's office and not permitted to leave. There are no allegations in the FAC that Lucas and DiGiacomo were present during that occurrence. The second occurrence (discussed at ¶¶16-19) purportedly involves contact between Plaintiff and Lucas.

3

this meeting nor that she was prevented by anyone from exiting the District Attorney's Office on that date.

The second relevant incident alleged in the complaint took place after Tancredi's court appearance, when Light allegedly drove Saenz to police headquarters where she was "interrogated" about Tancredi and not permitted to leave. (FAC at ¶20). The FAC then alleges:

> Lucas and DiGiacomo then joined Light in the room with Plaintiff and further interrogated her, this time suggesting that Tancredi was involved in illegal gambling operations. Again Plaintiff protested that she did not want "any part of this" and that she "wanted[ed] to go home". In response Lucas cautioned her to "go with the order of protection - - you're in with us. Ultimately, Light drove Plaintiff to her residence.

(FAC at ¶21).

## PROCEDURAL HISTORY

The instant matter was commenced by the filing of a summons and complaint on November 21, 2007. Following a pre-motion conference, Plaintiff filed an amended complaint (the FAC) which was served on the individual defendants on February 20, 2008. The FAC contains one claim which is comprised of two paragraphs (¶¶24-25). Paragraph 24 merely repeats and realleges all prior factual allegations. Paragraph 25 then states "[u]nder the premises Defendants violated Plaintiff's rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983." The FAC contains no elucidation as to which aspects of the Plaintiff's Fourth Amendment rights were violated.

4

On March 7, 2008, Lucas, DiGiacomo and the Town/Village of Harrison filed a joint motion to dismiss pursuant to FRCP 12(b)(6). In moving to dismiss the claims against Lucas and DiGiacomo, the movants argued that the FAC did not state a cause of action against them, as the allegations in the FAC simply state that they interacted with the Plaintiff after she had already been arrested. In opposing the motion, the Plaintiff argued that Lucas and DiGiacomo should be held responsible as co-conspirators under the civil RICO cases of *Beck v. Prupis*, 529 U.S. 494, 503, 120 S.Ct 1608, 146 L.Ed.2d 561 (2000) and *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir. 1999). (Plaintiff's Memorandum of Law in Opposition at p.4).[6] In response, Lucas and DiGiacomo argued that they could not be held responsible as co-conspirators since the FAC did not contain detailed allegation of a conspiracy and in any event, intracorporate defendants cannot conspire to violate a Plaintiff's civil rights.

In its decision, the Court did not adopt the Plaintiff's argument of co-conspiracy to violate the Plaintiff's rights. Additionally, the Court did not seize on any language in the FAC that would indicate that Lucas and DiGiacomo actually effectuated an arrest or otherwise restricted the Plaintiff's freedom of movement. Instead, the Court indicated that:

---

[6] A copy of Defendants' Memorandum of Law in Support of the Motion to Dismiss is appended as Exhibit "C". A copy of the Plaintiff's Memorandum of Law in Opposition is appended as Exhibit "D".

5

> Defendants' argument is too narrow. Defendants focus on a specific type of Fourth Amendment unreasonable seizure claim, that of false arrest. The cases defendants cite are inapplicable because plaintiff does not allege a false arrest claim. The Amended Complaint alleges a violation of plaintiff s rights as guaranteed by the Fourth Amendment; this includes unreasonable seizures that do not amount to an arrest. *See Delgado,* 466 U.S. at 215 ("the protection against unreasonable seizures also extends to seizures that involve only a brief detention short of traditional arrest") (internal quotation marks and citation omitted). Defendants have not cited, nor are we aware of, any case law that would support the argument that if defendants did not put plaintiff in the room to detain her but rather participated in interrogating her after she was already detained in that room, they are not liable for an unreasonable seizure claim. Even considering the cases defendants cite, our determination would be the same because we conclude that plaintiff has sufficiently alleged defendants personal involvement in her seizure. Plaintiff has sufficiently alleged a plausible claim that her detention and interrogation at the police station with DiGiacomo and Lucas and her detention and interrogation with Lucas at Eggenhauser's office were without probable cause and under circumstances in which the officers' conduct would have communicated to a reasonable person that she was not free to terminate the encounter. Plaintiff alleges that she was detained and interrogated without probable cause after she protested that she wanted to leave and did not want to be involved, and that the officers interrogated and threatened her and made false statements to coerce her to retaliate against Tancredi. Therefore plaintiff's claims against DiGiacomo and Lucas survive this motion to dismiss.

(Decision at pp.7-8).

## POINT I

## THE LEGAL STANDARD FOR A MOTION FOR RECONSIDERATION

Rule 6.3 of the Local Rules for the Southern and Eastern Districts provides a mechanism for moving for reconsideration or reargument of a court order determining a motion. As noted by the Second Circuit, a motion for

6

reconsideration may be granted where "the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Whether to grant or deny a motion for reconsideration lies within the sound discretion of a district court judge. *US Fidelity and Guaranty Co. v. Frosty Bites, Inc.*, 350 F.Supp.2d 508, 511 (S.D.N.Y. 2004). As has been noted by this Court, the standard for a motion for reconsideration is "strict." *Purdy v. Greenburgh*, 178 F.Supp.2d 439, 441 (S.D.N.Y. 2002). However, this Court has also explained that "a court may grant a motion for reconsideration 'to correct a clear error or prevent manifest injustice." *Mahmud v. Kaufmann*, 496 F.Supp.2d 266, 270 (S.D.N.Y. 2007) *citing, Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992). *See also Mikol v. Barnhart*, __ F.Supp.2d __, 2008 WL 2115396 (May 16, 2008) (in which the Court granted reconsideration to prevent manifest injustice).

It is respectfully submitted that the Court should grant reargument in this matter, as its decision expands the protections of the Fourth Amendment by allowing claims to be pursued against individuals who allegedly caused seizures that were less than an arrest, despite the fact that the Plaintiff had already been "seized" at the time. As the FAC contains no other allegations against Lucas or

7

DiGiacomo, reconsideration is appropriate to prevent the manifest injustice of requiring these officers to continue to defend themselves in this action.

## POINT II

### THE FAC CANNOT BE CONSTRUED TO ALLEGE THAT LUCAS AND DIGIACOMO EFFECTUATED A SEIZURE OF THE PLAINTIFF

In the prior motion, Lucas and DiGiacomo asserted that the allegations in the FAC could not support a cause of action against them as they only became involved with the Plaintiff after she was already seized. In opposing the motion, the Plaintiff did not dispute the logic applied by Lucas and DiGiacomo, other than to assert that they were part of a greater conspiracy to deprive the Plaintiff of her rights and that therefore they should be held liable as co-conspirators. In denying the motion the Court adopted a different legal theory, stating that the FAC maintained a cause of action against Lucas and DiGiacomo for actions that were less than a seizure. It is respectfully submitted that the Court erred in this regard as Fourth Amendment jurisprudence cannot support a finding that the FAC's allegations against Lucas and DiGiacomo violated the Plaintiff's rights.

### A. The Plaintiff Could Not Have Sustained a Lesser Seizure After She Was Already Arrested

In denying Lucas and DiGiacomo's application, the Court reasoned that the FAC alleged a violation of plaintiff's rights through an "unreasonable seizure[s]

8

that do[es] not amount to an arrest" citing to *I.N.S. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Additionally, the Court stated that the "Defendants have not cited, nor are we aware of, any case law that would support the argument that if defendants did not put plaintiff in the room to detain her but rather participated in interrogating her after she was already detained in that room, they are not liable for an unreasonable seizure." (Decision at 7). It is respectfully submitted that neither proposition of law is correct.

In *Delgado*, the Supreme Court examined an Immigration and Naturalization Service policy of conducting "factory surveys" to determine whether illegal aliens are working as employees in domestic factories. Within the context of its analysis, the Supreme Court opined that the Fourth Amendment "protection against unreasonable seizures also extends to seizures that involve only a brief detention short of traditional arrest." *Id*. at 215. However, this language cannot be taken in a vacuum. Prior to making this declaration, the *Delgado* court defined the term seizure, citing to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) for the principle that "only when the officer, by means of physical force or show of authority, has restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Following these statements, the *Delgado* court applied these concepts in holding that "[u]nless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he

9

was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Id*. at 216.

Subsequent cases applying *Delgado* have examined whether the questioning of a person who was technically not under arrest violated that person's Fourth Amendment rights, due to a perception that the person was not free to leave. *See generally U.S. v. Hooper*, 935 F.2d 484, 489 (2d Cir. 1991). In so doing, the courts look to the totality of the circumstances to determine the level of intrusion by the police. *See Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991) ("Whether a seizure is an arrest or a merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances").

What is apparent from the jurisprudence that has followed *Delgado* is that the purpose of a court's inquiry is to determine whether a policeman's questioning of a person who has not been formally detained might rise to the level of an infringement of their constitutional right to be free of unwanted government seizure. However, in the case at bar the Plaintiff has pleaded in the FAC that she already felt that she was not free to leave. Once the Plaintiff had already been seized, there can be no inquiry as to whether subsequent interaction with other police officers may constitute lesser levels of seizure because the person has already been arrested. To hold otherwise would subject every successive person

who maintains custody of a person who was falsely arrested to exposure for potentially violating the detainee's Fourth Amendment rights.

It should not be surprising that there are myriad cases wherein courts dismissed false arrest claims against officers who interacted with plaintiffs after they were already arrested. *See generally Universal Calvary Church v. City of New York*, 2000 WL 1538019 at n.37 (S.D.N.Y. Oct. 17, 2000)("Because Caliz was already arrested prior to that alleged imprisonment, the Court grants summary judgment as to this claim"). *See also Estevez v. City of Philadelphia*, 2007 WL 707358 (E.D. Pa. Mar. 2, 2007)("The Court agrees with Defendants that Plaintiff was legally arrested when he was placed in handcuffs at the scene and accordingly will grant Defendant Clancy summary judgment on Plaintiff's false arrest claim because Plaintiff was already arrested when Clancy filled out the arrest report").

Although the Court distinguished *Dallas v. Goldberg*, 2000 WL 1092986 (S.D.N.Y. Aug. 4, 2000) and *Merritt v. City of New York*, 2001 WL 1097866 (S.D.N.Y. Sept. 19, 2001) by noting that they involved the dismissal of false arrest claims, the logic utilized by Judge Chin in *Merritt* would be equally applicable in the case at bar. In determining that the officer was not liable for violating the Plaintiff's constitutional rights, Judge Chin observed:

> Once an arrest has occurred, its definition does not depend upon what follows, such as station house booking." *Dallas v. Goldberg,* No. 95 Civ. 9076(WHP), 2000 U.S. Dist. LEXIS 10949, at *17 (S.D.N.Y. Aug. 2, 2000) (quoting *Posr,* 944 F.2d at 98-99*)*. By plaintiff's own

> testimony, Officer Bradbury did not arrive until well after the initial arrest had taken place; according to plaintiff, Bradbury only showed up once plaintiff had already reached the precinct. Because Officer Bradbury was not involved in plaintiff's arrest (under plaintiff's scenario), plaintiff may not assert a false arrest claim against Officer Bradbury. *See id.* (dismissing false arrest claim against officer who arrived on scene after plaintiff had been placed in handcuffs).

Id. at *2.

The logic utilized by Judge Chin in *Merritt* is equally applicable in the case at bar. The allegations in the FAC indicate that the Plaintiff was instructed that she was no longer free to leave prior to Lucas and DiGiacomo's arrival at the precinct. Taking these allegations as true for purposes of a motion to dismiss, the Plaintiff would have been deemed arrested at that time and her claim would not be contingent on subsequent events such as being questioned by other officers.

To the extent that the Court notes that the Defendants have not cited cases that discuss liability for interrogating a person after she has already been detained, the Court is correct as that issue had not been raised by the Plaintiff in her opposition to the motion to dismiss. However, there are a fair number of cases that stand for the proposition that an improper interrogation does not constitute an independent violation of a person's constitutional rights. *See Yarris v. County of Delaware*, 465 F.3d 129 (3d Cir. 2006)("We perceive no support-and Yarris has identified no support-for the proposition that the use of impermissible interrogation techniques in securing statements prior to their use in court constituted an independent violation of Yarris's constitutional rights"). *See also, Higazy v.*

12

*Templeton*, 505 F.3d 161 (2d Cir. 2007)(noting within the context of a claim of civil rights violation by FBI detainee that there is no completed 5th Amendment violation if a person was coerced into giving a statement if that statement was not used against the declarant) and *Hickey v. City of New York*, 2002 WL 1974058 at *3 (S.D.N.Y. Aug. 6, 2002)("If all that can be shown regarding Reese and Delaney is that they came to the station house after Ms. Hickey had already been detained and asked her questions, that may not be enough to establish, as charged in this complaint, that they actually "held [her] against her will [and] detained her").

In the case at bar, since the allegations in the complaint indicate that the Plaintiff had already been seized prior to DiGiacomo or Lucas interaction with the Plaintiff, there is no basis to conclude that they are liable for alleged violations of her Fourth Amendment rights. As such, the prior order should be rescinded and the complaint must be dismissed as against DiGiacomo and Lucas.

**B. The Incident in Eggenhauser's Office Did Not Violate the Plaintiff's Rights**

The other incident that purportedly involved Officer Lucas (but not officer DiGiacomo) was alleged to have taken place in the office of ADA Barbara Eggenhauser. The FAC alleges that Eggenhauser, Lucas and Light instructed Plaintiff that she had been abused by Tancredi and further asked Saenz about Tancredi's cocaine addiction. (Complaint at ¶16). The complaint alleges that

13

during the meeting, Light supposedly told Plaintiff that Tancredi had called Plaintiff a "coke whore" (FAC at ¶17) and that Lucas advised Plaintiff that Tancredi was a thief. (FAC at ¶18). Lastly, the paragraph alleges that the three individuals made "not so subtle threats" that if Plaintiff did not cooperate they would seek to have her deported. (FAC at ¶19). The FAC contains no allegations that Plaintiff asked to leave Eggenhauser's office during this meeting nor that she was prevented by Lucas & DiGiacomo from exiting the District Attorney's Office on that date. While the FAC does allege that things were purportedly said to the Plaintiff which were distasteful, such statements do not constitute seizure. Since there was no assertion that the Plaintiff felt that she was not free to leave and there are no allegations that could lead a reasonable person to believe that she was not free to leave, this event cannot give rise to a cause of action under 42 USC §1983. *See generally Gilles v. Repicky*, 511 F.3d 239, 245 (2d Cir 2007)(noting that the assessment of whether a person has been arrested "involves an essentially legal assessment of whether the particular circumstances would warrant the belief that a person has been detained").

## CONCLUSION

In light of the foregoing, Lucas and DiGiacomo's motion for reconsideration should be granted and the complaint should be dismissed against them in its entirety.

Dated: Purchase, New York
      July 23, 2008

                Respectfully submitted,
                FRIEDMAN, HARFENIST, KRAUT & PERLSTEIN
                Attorneys for Defendants
                TOWN/VILLAGE OF HARRISON
                2975 Westchester Avenue, Suite 415
                Purchase, New York 10577
                (914) 701-0800

                By:_____S_____
                     Steven J. Harfenist
                     Neil Torczyner