UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

SOFIA SAENZ,

                    Plaintiff,             07 Civ. 10534 (WCC)

      -against-

EDWARD LUCAS, individually, VINCENT
MUSSOLINO, individually, RICHARD
LIGHT, individually, MARK DiGIACOMO,
individually, POLICE OFFICER JANE DOE,
individually, and the TOWN/VILLAGE OF
HARRISON, New York,

                  Defendants.

-----------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION OF DEFENDANT LUCAS AND
# DIGIACOMO'S MOTION FOR RECONSIDERATION

LOVETT & GOULD, LLP
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
(914) 428-8401

## Table of Contents

**Page**

Table of Authorities ...………………………………………………………..…..ii

Preliminary Statement.......………………………………………..……………..……….1

Argument………………………………………………………………………….1

POINT I
      DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE
      DENIED AS IT SIMPLY REHASHES THE SAME ARGUMENTS
      PREVIOUSLY MADE IN CONNECTION WITH THEIR MOTION
      TO DISMISS…………………………………………………………………....1

POINT II
      THE COURT CORRECTLY DENIED DEFENDANTS LUCAS
      AND DIGIACOMO'S MOTION TO DISMISS THE
      COMPLAINT…………………………………………………………………..3

Conclusion……………………………………………………………………….8

i

## TABLE AUTHORITIES

### Cases                                                                 Page

Adams v. United States, 686 F.Supp. 417 (S.D.N.Y. 1988)..................................1

Cerrone v. Brown, 246 F.3d 194 (2nd Cir. 2000)..................................................7

Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394 (1969)....................................7

Harris v. Wydra, 531 F.Supp.2d 233 (D.Conn 2007)............................................3

I.N.S. v. Delgado, 466 U.S.210, 104 S.Ct. 1758 (1984)................................3, 6, 7

Katz v. United States, 389 U.S. 347, 88 S.Ct. 507 (1967......................................7

Purdy v. Greenburgh, 178 F.Supp.2d 439 (S.D.N.Y. 2002)..................................1

Shrader v. CSX Transportation, Inc., 70 F.3d 255 (2nd Cir. 1995)...........................1

United States v. Torres, 949 F.2d 606 (2nd Cir. 1991)..........................................4

## Preliminary Statement

Defendants moved to dismiss the Complaint. On July 9, 2008, the Court denied the motion (*see* Opinion and Order annexed to Torczyner Decl. as Ex. A).

Defendants Lucas and DiGiacomo now move for reconsideration of that Opinion and Order.[1] For the reasons set forth in the instant memorandum of law, Defendants' motion should be denied in all respects.

## Argument

### POINT I

### DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE DENIED AS IT SIMPLY REHASHES THE SAME ARGUMENTS PREVIOUSLY MADE IN CONNECTION WITH THEIR MOTION TO DISMISS

The standards for granting a motion for reconsideration are "strict" in that motions for "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2nd Cir. 1995) *citing* Schonberger v. Serchuk, 742 F.Supp. 108, 119 (S.D.N.Y. 1990) and Adams v. United States, 686 F.Supp. 417, 418 (S.D.N.Y. 1988); *see also* Purdy v. Greenburgh, 178 F.Supp.2d 439, 441 (S.D.N.Y. 2002), *cited* by Defendants at p. 7 of their Memorandum of Law in Support of Motion for Reconsideration.

Here, Defendants Lucas and DiGiacomo have failed to meet this strict standard. In fact, their motion falls woefully short since it consists solely of a reiteration of the very same arguments made to the Court in support of their unsuccessful motion to dismiss.

---

[1] The Town has not moved for reconsideration (*see* Defendants' Memorandum of Law, p. 1, FN2).

1

More specifically, in connection with the underlying motion to dismiss Defendants Lucas and DiGiacomo argued they could not be liable on a Fourth Amendment claim since their involvement in the unlawful seizure occurred only after another individual had arrested or detained Plaintiff. They therefore concluded that they could not be held liable for an unlawful arrest under the Fourth Amendment (*see* Torczyner Decl. Ex. C, pp. 6-9).

Contrary to this argument, this Court correctly found that Defendants improperly relied upon an inapposite line of false arrest cases and failed to address cases finding unlawful seizures that fell short of a traditional arrest still amounted to a violation of the Fourth Amendment (*see* July 9, 2008 Opinion and Order, p. 7).

Faced with the Court's decision denying their motion, Defendants Lucas and DiGiacomo attempt to "reargue" that they cannot be liable for the two incidents in which they were involved because they did not "arrest" Plaintiff in the first instance. They assert the Court erred in its holding and somehow expanded the protections of the Fourth Amendment by permitting Plaintiff's claim to proceed (*see* Defendants' Memorandum of Law in Support of Motion for Reconsideration, pp. 8-14). In doing so, Defendants even cite to the same line of cases previously cited in support of their prior motion to dismiss (id. at 11 and compare to Defendants' Memorandum of Law in Support of Motion to Dismiss at p. 8-9).

Simply stated, because Defendants have not cited to any controlling case law or factual matter that was overlooked by the Court, their motion for reconsideration must be denied. Put differently, since Defendants have moved on the same factual and legal arguments previously made in the underlying motion, reconsideration should not be granted.

2

## POINT II

## THE COURT CORRECTLY DENIED DEFENDANTS LUCAS AND DIGIACOMO'S MOTION TO DISMISS THE COMPLAINT

Going one step further and addressing for the second time now the arguments proffered by Defendants, it is patently clear that that the Court's determination denying the motion to dismiss was correct.

First, Defendants' current motion ignores the clearly established case law cited by the Court in its July 9, 2008 Opinion and Order and instead continue to cite to the false arrest line of cases. To that end, they completely disregard cases where forms of seizure less than a traditional arrest can amount to unconstitutional conduct within the meaning of the Fourth Amendment. *See e.g.* I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758 (1984).

Second, Defendants continue to ignore the factors the Court correctly found weigh in favor of finding an unlawful seizure occurred in this case (*see* July 9, 2008 Opinion and Order, p. 5, setting forth a "non-exclusive list of factors suggesting a seizure has occurred...").

Thus, as the Court correctly found, factors such as "the threatening presence of police officers; the display of a weapon; physical contact by the officer; language indicating that compliance with the officer is compulsory; prolonged retention of a person's belongings; and a request by an officer to accompany him or her to the police station or a police room" can suggest a seizure has occurred. *See* July 9, 2008 Opinion and Order, p. 5, *citing* United States v. Rogers, 2000 WL 101235 at *10 (S.D.N.Y. Jan. 27, 2000) (*citing* Gardiner v. Incorporated Vill. of Endicott, 50 F.3d 151, 155 (2nd Cir. 1995)); *see* Harris v. Wydra, 531 F.Sup.2d 233, 242 (D.Conn. 2007) (*quoting* United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Here, not only was there a threatening presence by these police officials, but threatening statements were made by them and numerous prolonged detentions of Plaintiff occurred -- all under

circumstances where Plaintiff repeatedly requested the ability to leave which request was not granted.

Third, Defendants continue to ignore the totality of the events surrounding the encounters with Plaintiff and the allegations in the Complaint which must be accepted as true at this stage of the proceeding. *See* July 9, 2008 Opinion and Order, p. 5 "The Court must base its conclusion on the totality of the circumstances surrounding the encounter.", *citing* Rogers, 2000 WL 101235 at *10 (*citing* United States v. Glover, 957 F.2d 1004, 1008 (2nd Cir. 1992)); *see* United States v. Torres, 949 F.2d 606, 609 (2nd Cir. 1991).

Against this precedent, Defendants' continuing attempt to parse out allegations in a disjointed fashion must be disregarded – as the Court correctly did in ruling on the underlying motion to dismiss in the first instance. To that end, they omit from their analysis the threats made by Lucas to Plaintiff during both of his interactions with her and DiGiacomo's condonation of that conduct, the statements made by both respect to alleged illegal conduct engaged in by Tancredi, and the fact that these law enforcement officers were sending the message that Plaintiff was not free to leave unless she acquiesced in their efforts to target Tancredi.

Put differently, Defendants' moving papers make it sound as if these defendants merely engaged in a cordial "interrogation" of Plaintiff and as if all they did was "maintain custody" of her after someone else falsely arrested her (Defendants' Memorandum of Law in Support of Motion for Reconsideration, pp. 10-11). This tainted version of the events, of course, cannot be credited as it is inconsistent with the well-plead allegations in the First Amended Complaint.

Thus, when examining the totality of the facts plead in the First Amendment Complaint it is clear that the claims against Lucas and DiGiacomo should not be dismissed.

More specifically, the events alleged in the FAC are a series of related events that Police Captain Marraccini set in motion when he ordered Lucas, DiGiacomo, and their co-defendants to engage in conduct for the specific purpose of coercing Plaintiff's otherwise unwilling cooperation in their scheme to punish Ralph Tancredi for exercising his rights as guaranteed by the First Amendment (FAC, ¶¶4 and 9).

Thus, each of the Defendants conduct must be considered when assessing whether a reasonable person, in light of the various interactions with these officials, would perceive that a seizure of her liberty had occurred.

Here, Plaintiff was initially held in police custody, and a seizure within the meaning of the Fourth Amendment occurred, when Defendant Mussolino detained her in police headquarters for three hours on or about August 20, 2007, without her consent and under circumstances where she made it clear that she did not want to assist these police defendants in their retaliatory plan targeting Tancredi (FAC ¶¶10 and 11).

Several days later, Mussolino again attempted to coerce Plaintiff into signing paperwork to secure an order of protection against Tancredi and when she continued to refuse he directed her to call Eggenhauser (FAC ¶12). Eggenhauser then directed Plaintiff to meet with her at which meeting Plaintiff again makes clear that she does not want anything to do with an order of protection or assisting in anyway in the retaliation against Tancredi (FAC ¶13).

Thereafter, on the day before Tancredi's court appearance, Eggenhauser again summoned Plaintiff to her office – this time with Lucas and Light present. All three individuals engaged in similar acts against Plaintiff when they each falsely advised Plaintiff that Tancredi engaged in illegal conduct and disparaged Plaintiff by calling her a "coke whore." (FAC ¶¶16-18). All three

individuals also threatened Plaintiff that if she did not cooperate with them they would seek to have Plaintiff deported (FAC ¶19).

Clearly, under these circumstances, the Court correctly concluded that Lucas was not only directly involved in the unlawful seizure of Plaintiff but that his conduct, analyzed against the totality of the circumstances, "communicated to a reasonable person that she was not free to terminate the encounter" (*see* July 9, 2008 Opinion and Order, pp. 7-8).

Furthermore, after the court appearance when Light took Plaintiff to police headquarters and kept her there against her will and despite her protestations to the contrary, Defendants Lucas and DiGiacomo joined Light. They interrogated Plaintiff and claimed Tancredi was involved in additional illegal conduct. When Plaintiff told all three officers that she "wanted to go home" and did not want "any part of this", the response by Lucas was "go with the order of protection - you're in with us." (FAC ¶20-21).

Here again, the Court correctly concluded that DiGiacomo and Lucas were directly involved in the unlawful seizure and that their statements and conduct communicated to a reasonable person that Plaintiff was not free to leave (*see* July 9, 2008 Opinion and Order, pp. 7-8).

Defendants' attempts to now distinguish Delgado do not mandate a reversal of this Court's July 9th holding.  Even Defendants concede the operative language in Delgado: (1) defines a seizure as having occurred when "the officer, by means of physical force or show of authority, has restrained the liberty of a citizen."; and (2) held that a seizure occurs where a reasonable person would believe he was not free to leave (Defendants' Memorandum of Law in Support of Motion for Reconsideration, pp. 9-10, *citing* to Delgado, 466 U.S. at 215, 216).

Here, that is precisely what is plead in the First Amended Complaint. Plaintiff alleges that these police officers engaged in a strong show of authority over her, threatening to deport her, directing her to be at certain locations, transporting her to police headquarters, communicating false statements to her that Tancredi engaged in numerous criminal acts and referred to her as a "coke whore", not letting her go despite her clear statements that she wanted to leave, and even Lucas directly telling her in direct response to her requests to leave that if she goes with the order of protection she would be "in" with them. Under Delgado, as this Court correctly held, a reasonable person would believe their liberty to be seized based on the totality of the circumstances (see July 9, 2008 Opinion and Order, pp. 7-8).

Similarly, Defendants' citation to cases for the notion that an "improper interrogation does not constitute an independent violation of a person's constitutional rights" is misplaced. Not only do they rely on another completely inapposite line of cases but the facts in those matters are entirely different from those in the case at bar (see Defendants' Memorandum of Law, p. 12-13).[2]

Put differently, in Plaintiff's case, these officers did not just merely: (1) continue to maintain custody over Plaintiff; (2) improperly question her; or (3) even carry out the ministerial act of "booking" her after she was placed in police custody by someone else (see Defendants' Memorandum of Law, pp. 11-12, 12-13).

---

[2] The overall thrust of the cases cited by Defendants' analyze the Fifth Amendment right against self incrimination and absolute immunity for prosecutors who use statements obtained by allegedly coercive means at a later criminal proceeding (ie. trial or grand jury proceeding). Their inapplicability to the facts at bar is thus readily obvious. Moreover, controlling Second Circuit precedent dispels Defendants' argument since it has been clearly established since at least 1995 that "the Fourth Amendment prohibit[s] police seizures of persons for custodial interrogation – even brief detentions falling short of arrest – without probable cause." See Cerrone v. Brown, 246 F.3d 194 (2nd Cir. 2000), citing Dunaway v. New York, 442 U.S. 200, 206-216, 999 S.Ct. 2248 (1979) ("holding that 'detention for custodial interrogation ... intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest' and to require probable cause.); Davis v. Mississippi, 394 U.S. 721, 726-28, 89 S.Ct. 1394 (1969) (holding that the Fourth Amendment applies during the investigative, as well as accusatory, stage); Katz v. United States, 389 U.S. 347, 358-59, 88 S.Ct. 507 (1967)."

Rather, these defendants personally participated in the acts amounting to an unreasonable seizure of Plaintiff's liberty under circumstances where she expressly stated in these defendants' presence she wanted to leave and in response was both threatened and continued to be held without her consent and without probable cause.

Against these facts, the Court correctly held that "even considering the cases defendants cite, our determination would be the same because we conclude that plaintiff has sufficiently alleged **defendants personal involvement** in her seizure." (*see* July 9, 2008 Opinion and Order, p. 7) (emphasis added).

Defendants' motion for reconsideration should therefore be denied for the same reasons set forth in the July 9, 2008 Opinion and Order.

### Conclusion

Defendant Lucas and Giacomo's motion for reconsideration should be denied in all respects.

Dated: White Plains, N.Y.
     July 31, 2008

                           LOVETT & GOULD, LLP
                           By: _____
                           Kim Berg (KB1425)
                           Attorneys for Plaintiff
                           222 Bloomingdale Road
                           White Plains, N.Y. 10605
                           914-428-8401