UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SOFIA SAENZ,                                                              07 CIV 10534 (WCC)

                                        Plaintiffs,

      -against-

EDWARD LUCAS, individually, VINCENT
MUSSOLINO, individually, RICHARD
LIGHT, individually, MARK DiGIACOMO,
individually, POLICE OFFICER JANE DOE,
individually, and the TOWN/VILLAGE OF
HARRISON, New York,

                                        Defendants.
--------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF EDWARD LUCAS
AND MARK DIGIACOMO'S MOTION FOR RECONSIDERATION**

**FRIEDMAN, HARFENIST, KRAUT & PERLSTEIN**
**Attorneys for Defendants**
2975 Westchester Avenue, Suite 415
Purchase, New York   10577
(914) 701-0800

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. i

PRELIMINARY STATEMENT ....................................................................... 1

POINT I

  THE MOVANTS HAVE MET THE STANDARD
  FOR A MOTION FOR RECONSIDERATION ......................................... 2

POINT II

  THE FAC CANNOT BE CONSTRUCTED TO
  ALLEGE THAT LUCAS AND DIGIACOMO
  EFFECTUATED A SEIZURE OF THE PLAINTIFF
  AT THE HARRISON POLICE STATION……………………………….4

POINT III

  THE INCIDENT IN EGGENHAUSER'S OFFICE
  DID NOT VIOLATE THE PLAINTIFF'S RIGHTS……………………..7

CONCLUSION………………………………………………………………...11

## TABLE OF AUTHORITIES

**Cases**
*Dallas v. Goldberg*, 2000 WL 1092986 (S.D.N.Y. Aug. 4, 2000)……………………………..4
*Estevez v. City of Philadelphia*, 2007 WL 707358 (E.D. Pa. Mar. 2, 2007) ................................ 4
*Fredericks v. Chemipal, Ltd.*, 2007 WL 1975441 (S.D.N.Y. July 6, 2007) ................................. 3
*Gilles v. Repicky*, 511 F.3d 239, 245 (2d Cir 2007)...................................................................... 10
*I.N.S. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) ........................... passim
*Mahmud v. Kaufmann*, 496 F.Supp.2d 266, 270 (S.D.N.Y. 2007) ................................................ 3
*Merritt v. City of New York*, 2001 WL 1097866 (S.D.N.Y. Sept. 19, 2001) ................................. 4
*Mikol v. Barnhart*, 554 F.Supp.2d 498, 2008 WL 2115396 (May 16, 2008) ................................ 3
*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ................................................ 4
*U.S. v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1991)..................................................................... 9
*U.S. v. Rogers*, 2000 WL 101235 (S.D.N.Y. Jan. 27, 2000) ......................................................... 8
*U.S. v. Torres*, 949 F.2d 606,609 (2d Cir. 1991) .......................................................................... 9
*Universal Calvary Church v. City of New York*, 2000 WL 1538019
 (S.D.N.Y. Oct. 17, 2000) ............................................................................................................ 4
*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ........................... 3

## PRELIMINARY STATEMENT

The instant matter is before the Court on Defendants' Edward Lucas ("Lucas") and Mark DiGiacomo's ("DiGiacomo") motion for reconsideration pursuant to Local Rule 6.3 of this Court's July 9, 2008 decision denying their motion to dismiss Plaintiff Sofia Saenz's ("Plaintiff") first amended complaint ("FAC") pursuant to FRCP 12(b)(6) for failure to state a cause of action.

In moving for reconsideration, Lucas and DiGiacomo argued that the FAC could not state a cause of action against them, as the Court had in effect ruled in its July 9, 2008 decision that an individual who is already "seized" within the context of the Fourth Amendment could be subjected to additional lesser seizures while already in custody. In so doing, Lucas and DiGiacomo demonstrated that in reaching this issue which had not been raised by the Plaintiff in opposing the prior motion, the Court had erred in its application of *I.N.S. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). In opposing Lucas and DiGiacomo's motion, the Plaintiff has now adopted the Court's theory and admitted that the Plaintiff was seized in the police station prior to her interaction with Lucas and DiGiacomo. Additionally, the Plaintiff has argued that the totality of the circumstances of all previous interactions with the Defendants demonstrated that her rights were purportedly violated during her limited contact with Lucas and DiGiacomo.

The Plaintiff's new arguments notwithstanding, the facts pleaded in the FAC do not demonstrate causes of action against Lucas nor DiGiacomo. Although the Plaintiff argues that under an analysis of the totality of the circumstances there is a viable cause of action against Lucas and DiGiacomo, there is no rational basis for a conclusion that the Plaintiff was seized when she met with District Attorney Eggenhauser and Lucas.[1] Furthermore, under a proper application of *Delgado*, there can be no finding that Lucas and DiGiacomo's purported interrogation violated the Plaintiff's Fourth Amendment rights as there can be no "lesser" seizures after the Plaintiff had already been purportedly arrested.

## POINT I

### THE MOVANTS HAVE MET THE STANDARD FOR A MOTION FOR RECONSIDERATION

In opposing Lucas and DiGiacomo's motion for reconsideration, the Plaintiff has argued that the movants have not met the standard under Local Rule 6.3 because the movants have purportedly not made new arguments and are merely reiterating prior cases that were mentioned in the prior motion sequence. This is not entirely accurate. The movants have mentioned some of their prior cases and arguments as the purpose of a motion for reconsideration is not to introduce new

---

[1] As the motion sequence seeks reconsideration of a motion made pursuant to FRCP 12(b)(6) all factual statements are derived wholly from the FAC, which must be presumed by the Court to be true. A copy of the FAC was appended to the motion for reconsideration as Exhibit "B".

2

arguments. *See generally Fredericks v. Chemipal, Ltd.*, 2007 WL 1975441 at*1 (S.D.N.Y. July 6, 2007)("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue"). As noted by this Court, the introduction of prior arguments is permitted, since "a court may grant a motion for reconsideration 'to correct a clear error or prevent manifest injustice." *Mahmud v. Kaufmann*, 496 F.Supp.2d 266, 270 (S.D.N.Y. 2007) *citing, Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992). *See also Mikol v. Barnhart*, 554 F.Supp.2d 498, 2008 WL 2115396 (May 16, 2008) (in which the Court granted reconsideration to prevent manifest injustice).

In the case at bar, the Court should grant reargument in this matter, as its decision revolved around an issue not raised by the Plaintiff in her opposition to the motion to dismiss and thus not addressed by the movants in opposition. Indeed, the Court's decision stands alone in allowing claims to be pursued against individuals who allegedly caused seizures that were less than an arrest, despite the fact that the Plaintiff had already been "seized" at the time. As the Court's independent theory of the case expanded the coverage of the Fourth Amendment beyond *Delgado* and in contravention of numerous published decisions which bar recovery for successive Fourth Amendment violations, reconsideration is

3

appropriate to prevent the manifest injustice of requiring these officers to continue to defend themselves in this action.

## POINT II

### THE FAC CANNOT BE CONSTRUED TO ALLEGE THAT LUCAS AND DIGIACOMO EFFECTUATED A SEIZURE OF THE PLAINTIFF AT THE HARRISON POLICE STATION

In moving for reconsideration, Lucas and DiGiacomo asserted that the allegations in the FAC could not support a cause of action against them as they only became involved with the Plaintiff after she was already seized. In so doing, the movants explained that *I.N.S. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) and *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) stand for the principle that there are varying degrees of seizure that are measured by the courts in order to determine which level of government intrusion short of a seizure has occurred. However, in the case at bar the Plaintiff pleaded in the FAC (and reiterated in her opposition to the motion for reconsideration) that she was not free to leave before she interacted with Lucas and DiGiacomo at the police station. The movants then offered a significant line of cases[2] in which sister District Courts dismissed causes of actions against police officers for interactions

---

[2] See generally *Universal Calvary Church v. City of New York*, 2000 WL 1538019 at n.37 (S.D.N.Y. Oct. 17, 2000). *See also Estevez v. City of Philadelphia*, 2007 WL 707358 (E.D. Pa. Mar. 2, 2007); *Dallas v. Goldberg*, 2000 WL 1092986 (S.D.N.Y. Aug. 4, 2000) and *Merritt v. City of New York*, 2001 WL 1097866 (S.D.N.Y. Sept. 19, 2001).

which occurred after the plaintiff was already in custody. The movants concluded that since the Plaintiff in the case at bar has already been seized before Lucas and DiGiacomo interacted with her, there could be no liability for subsequent interaction that constituted (at worst) lesser levels of seizure.

In opposing the motion for reconsideration, the Plaintiff has not presented any cases where a court has ruled that a police officer violated an individual's civil rights through post arrest conduct that constituted "lesser violations" of that person's Fourth Amendment rights. Instead, the Plaintiff has asserted that the movants' actions constituted an "unreasonable seizure" under *Delgado* in that the movants did not: (a) merely maintain custody of the plaintiff; (b) improperly question her or (c) carry out the ministerial act of booking her. The Plaintiff then concludes that the movants' liability is established by the fact that they purportedly threatened the plaintiff and maintained custody of her despite her protestations that she wished to leave. (Plaintiff's Memorandum of Law at pp.7-8).

There are two major problems with the Plaintiff's opposition which further demonstrate that the FAC should be dismissed as against Lucas and DiGiacomo. The first defect in the Plaintiff's argument is that there is no language in *Delgado* or in any other decisions that would support the imposition of liability for lesser seizures after a person has already been arrested. Perhaps aware of this problem, the Plaintiff attempts to vilify the movants by amplifying the conduct attributed to

them in the FAC. This is the second major flaw in the plaintiff's argument as the allegation is not contained in the FAC. The sole paragraph that details the Plaintiff's interaction with Lucas and DiGiacomo at the police station alleges that:

> Lucas and DiGiacomo then joined Light in the room with Plaintiff and further interrogated her, this time suggesting that Tancredi was involved in illegal gambling operations. Again Plaintiff protested that she did not want "any part of this" and that she "wanted[ed] to go home". In response Lucas cautioned her to "go with the order of protection - - you're in with us. Ultimately, Light drove Plaintiff to her residence.

(FAC at ¶21).

Contrary to the Plaintiff's eleventh hour amplified allegations in the opposition to the motion for reconsideration, the first amended complaint merely alleges that Lucas and DiGiacomo entered the room and continued an interrogation after the Plaintiff's request to leave had already been denied. As case law is devoid of any case where officers were held liable for post arrest conduct that constituted lesser violations then an arrest, the FAC does not state a cause of action against Lucas and DiGiacomo based on this occurrence.[3]

---

[3] As indicated in the Memorandum of Law in support of the Motion to Dismiss and the Memorandum of Law in support of the motion for reconsideration., the only allegation of conduct directly attributable to Officer DiGiacomo related to this incident in the police station as laid out in ¶21 of the FAC. The FAC did contain an allegation that Lucas purportedly interacted with the Plaintiff one other time – during the meeting at Eggenhauser's office. As will be addressed in Point III below, this incident also does not give rise to liability as there are no allegations of any form of seizure occurring in Eggenhauser's office.

6

# POINT III

## THE INCIDENT IN EGGENHAUSER'S OFFICE DID NOT VIOLATE THE PLAINTIFF'S RIGHTS

In both the original motion to dismiss[4] and the motion for reconsideration,[5] it was argued that the purported incident that took place in non-party Barbara Eggenhauser's[6] office (FAC at ¶¶16-19) did not constitute a seizure under the Fourth Amendment. In opposing the motion to reargue, the Plaintiff has submitted that under a totality of the circumstances analysis, there is a cause of action pleaded in relation to this incident. The Plaintiff is incorrect as there are simply no facts to demonstrate that there was a seizure in Eggenhauser's office.

The FAC alleges that one day prior to Tancredi's court appearance, the Plaintiff was summoned to Eggenhauser's office where, Lucas and Light instructed the Plaintiff that she had been abused by Tancredi and further asked Saenz about Tancredi's cocaine addiction.[7] (Complaint at ¶16). The FAC also alleges that during the meeting, Light supposedly told Plaintiff that Tancredi had called Plaintiff a "coke whore" (FAC at ¶17) and that Lucas advised Plaintiff that

---

[4] See Defendants' Memorandum of Law in Support of Motion to Dismiss at pp.7-9. A copy of the Memorandum of Law was appended to the motion for reconsideration as Exhibit "C."

[5] See Memorandum of Law in Support of Motion for Reconsideration at pp.13-14.

[6] Eggenhauser was named a party in the original complaint. However, during the pre-motion conference on February 1, 2008, Saenz agreed to voluntarily discontinue the action against her without prejudice and as such she is not named as a party in the FAC.

[7] The FAC contains two incidents which involved the Plaintiff and Lucas and one that involved the Plaintiff and DiGiacomo. The Plaintiff does not allege that DiGiacomo was present during the meeting at Eggenhauser's office.

7

Tancredi was a thief. (FAC at ¶18). Lastly, the paragraph alleges that the three individuals made "not so subtle threats" that if Plaintiff did not cooperate they would seek to have her deported. (FAC at ¶19). The FAC contains no allegations that Plaintiff was prevented by Light, Lucas or Eggenhauser from exiting the District Attorney's Office on that date. Indeed there is no allegation that Plaintiff even asked to leave the office during the meeting.

In opposing the motion to reargue, the Plaintiff asserts that under *U.S. v. Rogers*, 2000 WL 101235 (S.D.N.Y. Jan. 27, 2000) the court must view the totality of the circumstances and conclude that she was not free to leave Eggenhauser's office during this meeting. However, Plaintiff misapplies *Rogers* and the cases cited by Judge McMahon in *Rogers*. In ruling that there was no seizure when Rogers entered the police station, Judge McMahon explained:

> Rogers argues first that the setting of the interrogation indicates that he was in custody. Specifically, he asserts that a reasonable person would not have felt free to leave after being escorted by Detectives past uniformed security guards and through metal detectors, into the Detectives Division through a locked, unattended rear entrance, and down a series of corridors leading to the interview room. He also asserts that the nature of the interrogation room-small, empty of distractions, and away from an exit door-conveyed the message that he was not free to leave.
>
> In the context of determining whether an individual is in custody under the Fifth Amendment, the courts have long recognized that the setting of a police station or a police interrogation room, without more, is not so coercive as to preclude a reasonable person from feeling free to leave. *See Oregon v. Mathiason,* 429 U.S. 492, 495 (1977) (noting that *Miranda* warnings need not be imposed "simply

8

> because the questioning takes place in the station house); *United States v. Kirsteins,* 906 F.2d 919, 924 (2d Cir.1990) (citing *Mathiason* for the proposition that "a police station is not so coercive an environment as to establish, without more, custodial restriction of freedom"). Although both of those cases involved defendants who were ultimately permitted to leave the station after questioning, there is nothing in the present case to indicate that the physical layout of the station or demeanor of the officers as they took Rogers inside of the Yonkers station house was in any way beyond the routine or otherwise coercive.

*Id*. at 12.

Other cases cited to by the Plaintiff also do not indicate that the mere questioning in an office constitutes a seizure. In *U.S. v. Torres*, 949 F.2d 606, 609 (2d Cir. 1991) the Second Circuit stated that "we do not believe that a law enforcement agent's request to step inside a police office without more transforms an otherwise consensual encounter into a fourth amendment seizure." In *U.S. v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1991) the Second Circuit found that when an officer requested Glover "to leave the public area of the terminal and to return to the NFTA security office for further questioning, without returning Glover's identification and without telling Glover that he was free to leave, we believe that Glover and his bags were seized."

In the case at bar, there are simply no facts pleaded that would give the impression that the Plaintiff felt that she was not free to leave Eggenhauser's office. Indeed, the Plaintiff does not even make the conclusory statement in her complaint that she felt that she was not free to leave. This is in sharp contrast to a

9

prior incident in Eggenhauser's office which did not involve any Harrison police officers (FAC at ¶¶13-15) where the Plaintiff specifically pleads at ¶15 of the FAC that "at the time of Plaintiff's in-house meeting with Eggenhauser and following Plaintiff's repeated refusals to agree to an order of protection, Plaintiff's confinement in Eggenhauser's office was non-consensual, Plaintiff was aware of her confinement, there was no probable cause and/or arguable probable cause to detain her, and that detention was otherwise privileged or authorized." Had Plaintiff made similar allegations in relation to the meeting at Eggenhauser's office that Lucas attended, then perhaps she might have met the pleading requirements for a Fourth Amendment seizure. However, based on the totality of factual allegations about this second meeting in Eggenhauser's office there is simply no basis for an inference that the Plaintiff was seized. *See generally Gilles v. Repicky*, 511 F.3d 239, 245 (2d Cir 2007)(the assessment of whether a person has been arrested "involves an essentially legal assessment of whether the particular circumstances would warrant the belief that a person has been detained").

## CONCLUSION

In light of the foregoing, Lucas and DiGiacomo's motion for reconsideration should be granted and the complaint should be dismissed against them in its entirety.

Dated: Purchase, New York
        August 8, 2008

        Respectfully submitted,
        FRIEDMAN, HARFENIST, KRAUT & PERLSTEIN
        Attorneys for Defendants
        TOWN/VILLAGE OF HARRISON
        2975 Westchester Avenue, Suite 415
        Purchase, New York  10577
        (914) 701-0800

        By:_____S_____
           Steven J. Harfenist
           Neil Torczyner